USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: _8/18/2020_

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------X
MICROBOT MEDICAL, INC,                     :
                                           :
                    Plaintiff,             :
                                           :
        - against -                        :
                                           :
ALLIANCE INVESTMENT                        :
MANAGEMENT LTD., and                       :
JOSEPH MONA,                               :
                                           :
                    Defendants.            :
-----------------------------------------------------X

19 Civ. 03782 (GBD) (RWL)

**REPORT AND RECOMMENDATION
TO HON. GEORGE B. DANIELS:
MOTION FOR SUMMARY JUDGMENT
AND CROSS-MOTIONS FOR SANCTIONS**

**ROBERT W. LEHRBURGER, United States Magistrate Judge.**

Plantiff Microbot Medical Inc. ("Microbot") seeks to recover short-swing profits from Defendant Alliance Investment Management, Ltd. ("Alliance"), under § 16(b) of the Securities Exchange Act of 1934 ("Act"). Section 16(b) is a strict liability statute that prohibits a beneficial owner of more than 10% of a company's stock from buying or selling the company's stock within six months after acquiring beneficial ownership, and allows the company to recover any profits made by the beneficial owner during that period.[1] Microbot alleges that between November 2018 and January 2019, Alliance was a beneficial owner of Microbot stock and engaged in prohibited transactions. Microbot also claims that Defendant Joseph Mona ("Mona") is jointly and/or severally liable for the same reason. Before the Court are Alliance's Renewed Motion for

---

[1] Rule 16-1(a)(1) defines "beneficial owner" as any person who is deemed a beneficial owner under § 13(d) of the Act and also owns more than 10% of any class of an issuer's equity securities registered under § 12 of the Act. 17 C.F.R § 240.16a-1(a)(1). Rule 13d-3(a), which governs § 13(d) of the Act, in turn defines a "beneficial owner" of a security as any person who has "[v]oting power which includes the power to vote, or to direct the voting of, such security; and/or [i]nvestment power which includes the power to dispose, or to direct the disposition of, such security." 17 C.F.R. § 240.13d-3(a)(1)-(2).

1

Summary Judgment, as well as Microbot and Alliance's cross-motions for sanctions under Rule 11 of the Federal Rules of Civil Procedure.  For the reasons set forth below, Alliance's motion for summary judgment should be GRANTED, and Microbot's claims against Alliance should be dismissed with prejudice.  Both Microbot and Alliance's cross-motions for sanctions should be DENIED.

## Factual Background

The Court draws the factual background from Alliance's Rule 56.1 Statement of Undisputed Material Facts ("Statement of Undisputed Material Facts" or "SOF") filed in support of its summary judgment motion.  (Dkt. 45-2.)  Though Microbot had the opportunity and obligation to submit a counterstatement of material facts pursuant to S.D.N.Y. Local Civil Rule 56.1, it did not do so.  Accordingly, the facts asserted in Alliance's Statement of Undisputed Material Facts are deemed admitted.[2]

Plaintiff Microbot is a Delaware corporation in the business of creating micro-robotic technology devices for use in various fields of medicine.  (Compl. ¶ 6.) Defendant Alliance is a foreign asset management and financial advisory firm organized

---

[2] All factual statements in the SOF cite to evidentiary materials that are attached as exhibits to Alliance's declaration filed in support of its summary judgment motion (Declaration of Danielle M. McLaughlin in Support of Defendant's Renewed Motion for Summary Judgment ("Def. Decl."), Dkt. 45-3), or are otherwise in the record.  The Court has reviewed all such citations, and finds that the evidentiary materials support the factual assertions made in the SOF.  Accordingly, and in the absence of any counterstatement to the SOF, the Court deems all facts contained therein to be admitted by Microbot for purposes of this motion pursuant to S.D.N.Y. Local Civil Rule 56.1(c).  *See Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003) ("If the opposing party . . . fails to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted"); *Galasso v. Eisman, Zucker, Klein & Ruttenberg*, 310 F. Supp. 2d 569, 574 (S.D.N.Y. 2004) ("If a party opposing a motion for summary judgment does not submit a Rule 56.1 Statement, the factual assertions contained in the movant's Statement are deemed admitted and uncontroverted").  The Court also cites to Microbot's Second Amended Complaint ("Compl.") for factual propositions where appropriate.  (Dkt. 44.)

under the laws of Jamaica, licensed by the Financial Services Commission of Jamaica, and domiciled in Jamaica.   (SOF ¶¶ 1-2.)   Defendant Joseph Mona and his wife Lauretta Mona ("the Monas") have kept a brokerage account at Alliance since February 2008; since then, the Monas have maintained sole discretion over trades made through their account and have paid a commission to Alliance on a "per trade" basis.   (SOF ¶¶ 2-4.)

On January 17, 2019, Alliance filed a Form 3 "Initial Statement of Beneficial Ownership of Securities" with the U.S. Securities and Exchange Commission ("SEC") using the SEC's EDGAR filing system, disclosing that as of November 16, 2018, Alliance was the beneficial owner of 300,320 shares of Microbot common stock, which amounted to a greater than 10% stake in the outstanding common stock of the company.  (SOF ¶ 6.)  That same day, Alliance filed a Form 4 "Statement of Changes in Beneficial Ownership" with the SEC through EDGAR, reporting certain trades that Alliance undertook while it was the beneficial owner of Microbot common stock:

| Table I - Non-Derivative Securities Acquired, Disposed of, or Beneficially Owned | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 1. Title of Security (Instr. 3) | 2. Transaction Date (Month/Day/Year) | 2A. Deemed Execution Date, if any (Month/Day/Year) | 3. Transaction Code (Instr. 8) | | 4. Securities Acquired (A) or Disposed Of (D) (Instr. 3, 4 and 5) | | | 5. Amount of Securities Beneficially Owned Following Reported Transaction(s) (Instr. 3 and 4) | 6. Ownership Form: Direct (D) or Indirect (I) (Instr. 4) | 7. Nature of Indirect Beneficial Ownership (Instr. 4) |
| | | | Code | V | Amount | (A) or (D) | Price | | | |
| Microbot Med Inc, Common Stock | 11/19/2018 | | P | | 2,400 | A | $2.9975 | 302,720 | D | |
| Microbot Med Inc, Common Stock | 11/21/2018 | | P | | 24,873 | A | $2.2114 | 327,593 | D | |
| Microbot Med Inc, Common Stock | 11/21/2018 | | S | | 6,309 | D | $2.9556 | 321,284 | D | |
| Microbot Med Inc, Common Stock | 11/26/2018 | | P | | 37,986 | A | $1.9541 | 359,270 | D | |
| Microbot Med Inc, Common Stock | 01/08/2019 | | S | | 2,269 | D | $2.6983 | 357,001 | D | |
| Microbot Med Inc, Common Stock | 01/09/2019 | | P | | 14,280 | A | $2.1873 | 371,281 | D | |
| Microbot Med Inc, Common Stock | 01/09/2019 | | S | | 1,280 | D | $2.2678 | 370,001 | D | |
| Microbot Med Inc, Common Stock | 01/14/2019 | | P | | 1,773 | A | $6.4391 | 371,774 | D | |

(SOF ¶¶ 7-8.)

3

On April 28, 2019, Microbot filed a Complaint against Alliance to recover alleged short-swing profits under § 16(b) of the Securities and Exchange Act of 1934.  (SOF ¶ 9; Dkt. 1.)  On June 5, 2019, Microbot filed its First Amended Complaint, again alleging that Alliance had engaged in prohibited transactions while it was a beneficial owner of Microbot stock, and setting forth the record of those trades:

|  | Date | Transaction | # of Shares Purchased/Sold | Price/Share | # of Shares Outstanding | Ben. Ownership (%) (following transaction) |
|---|---|---|---|---|---|---|
| (1) | Nov. 19, 2018 | Purchase | 2,400 | $2.9975 | 2,975,676 | 302,720 (10.17%) |
| (2) | Nov. 21, 2018 | Purchase | 24,873 | $2.2114 | 2,975,676 | 327,593 (11.01%) |
| (3) | Nov. 21, 2018 | Sale | 6,309 | $2.9556 | 2,975,676 | 321,284 (10.8%) |
| (4) | Nov. 26, 2018 | Purchase | 37,986 | $1.9541 | 2,975,676 | 359,270 (12.07%) |
| (5) | Jan. 8, 2019 | Sale | 2,269 | $2.6983 | 3,012,343 | 357,001 (11.85%) |
| (6) | Jan. 9, 2019 | Purchase | 14,280 | $2.1873 | 3,012,343 | 371,281 (12.33%) |
| (7) | Jan. 9, 2019 | Sale | 1,280 | $2.2678 | 3,012,343 | 370,001 (12.28%) |
| (8) | Jan. 14, 2019 | Purchase | 1,773 | $6.4391 | 3,012,343 | 371,774 (12.34%) |

(SOF ¶¶ 10-11; Dkt. 13.)

By way of Microbot's Complaint and First Amended Complaint, Alliance became aware that it had incorrectly attributed a client's trades to itself by making SEC filings and doing so using its own Central Index Key ("CIK").[3]  (SOF ¶ 13.)  During an August 5, 2019 telephone conference, defense counsel informed plaintiff's counsel of Alliance's filing error, stated that Alliance was not the beneficial owner of Microbot stock, and disclosed that Alliance's client Joseph Mona was the beneficial owner of the shares. (SOF ¶ 14.)  Shortly afterward, on August 14, 2019, Alliance sent a letter to the SEC formally requesting that the SEC delete Alliance's Form 3 and Form 4 filings, "which were filed under an incorrect CIK number [CIK:  0001748828] as they were filed by

---

[3] The CIK "is used on the SEC's computer systems to identify corporations and individual people who have filed disclosure with the SEC."  *CIK Lookup*, SEC, https://www.sec.gov/edgar/searchedgar/cik.htm.

Alliance Investment Ltd. rather than its client who is the actual beneficial owner of the Microbot Medical Inc. (CIK: 000883975) securities . . . ."; the SEC confirmed receipt of the letter that same day.  (SOF ¶ 16-17; Dkt. 21 at Ex. 1-3.)

While Microbot and Alliance were engaged in discovery, on October 18, 2019, Defendant Joseph Mona filed a Form 3 "Initial Statement of Beneficial Ownership of Securities" with the SEC via EDGAR, indicating that as of November 16, 2018, he was the beneficial owner of 300,320 shares of Microbot common stock, which amounted to a more than 10% stake in the outstanding common stock of the company; by his Form 3 filing, Mona notified the SEC that he, not Alliance, was the beneficial owner of Microbot stock during the period in question.  (SOF ¶ 21; Def. Decl. at Ex. 8.)  That same day, Mona made two Form 5 "Annual Statement of Changes in Beneficial Ownership" filings with the SEC through EDGAR, reporting certain trades that he had made while he was a beneficial owner of Microbot stock.  (SOF ¶ 22; Def. Decl. at Ex. 9-10.)  Soon afterward, on October 28, 2019, Mona made another Form 5 filing with the SEC, again using EDGAR, correcting certain omissions that he had made in one of his October 18, 2019 Form 5 filings.  (SOF ¶ 23; Def. Decl. at Ex. 11.)

By his Form 3 and Form 5 filings, Mona disclosed to the SEC that he owned the exact same number of shares and executed the exact same transactions that Alliance had mistakenly attributed to itself in its January 17, 2019 Form 3 and Form 4 filings:

| Table I - Non-Derivative Securities Acquired, Disposed of, or Beneficially Owned | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 1. Title of Security (Instr. 3) | 2. Transaction Date (Month/Day/Year) | 2A. Deemed Execution Date, if any (Month/Day/Year) | 3. Transaction Code (Instr. 8) | 4. Securities Acquired (A) or Disposed Of (D) (Instr. 3, 4 and 5) | | | 5. Amount of Securities Beneficially Owned at end of Issuer's Fiscal Year (Instr. 3 and 4) | 6. Ownership Form: Direct (D) or Indirect (I) (Instr. 4) | 7. Nature of Indirect Beneficial Ownership (Instr. 4) |
| | | | | Amount | (A) or (D) | Price | | | |
| Microbot Medical Common Stock | 11/19/2018 | | P5 | 2,400 | A | $2.99 | 348,971 | D | |
| Microbot Medical Common Stock | 11/21/2018 | | P5 | 24,873 | A | $2.21 | 348,971 | D | |
| Microbot Medical Common Stock | 11/21/2018 | | S5 | 6,309 | A | $2.96 | 348,971 | D | |
| Microbot Medical Common Stock | 11/26/2018 | | P5 | 37,986 | A | $1.95 | 348,971 | D | |

| Table I - Non-Derivative Securities Acquired, Disposed of, or Beneficially Owned | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 1. Title of Security (Instr. 3) | 2. Transaction Date (Month/Day/Year) | 2A. Deemed Execution Date, if any (Month/Day/Year) | 3. Transaction Code (Instr. 8) | 4. Securities Acquired (A) or Disposed Of (D) (Instr. 3, 4 and 5) | | | 5. Amount of Securities Beneficially Owned at end of Issuer's Fiscal Year (Instr. 3 and 4) | 6. Ownership Form: Direct (D) or Indirect (I) (Instr. 4) | 7. Nature of Indirect Beneficial Ownership (Instr. 4) |
| | | | | Amount | (A) or (D) | Price | | | |
| Microbot Medical Common Stock | 01/08/2019 | | S | 2,269 | D | $2.7 | 0 | D | |
| Microbot Medical Common Stock | 01/09/2019 | | P5 | 14,280 | A | $2.19 | 0 | D | |
| Microbot Medical Common Stock | 01/09/2019 | | S5 | 1,280 | D | $2.27 | 0 | D | |
| Microbot Medical Common Stock | 01/14/2019 | | P5 | 1,773 | A | $6.43 | 0 | D | |

(SOF ¶ 24; Def. Decl. at Ex. 9, 11.)

Based on the foregoing facts, Microbot claims that Defendants Alliance and Mona, "singly, jointly, or in the alternative, realized short swing profits . . . which the Defendants must disgorge to Microbot in proportion to their respective pecuniary interests therein." (Compl. ¶ 22.) Additionally, Microbot "seeks to discover, and to compel Alliance to disclose, additional transactions that have not been reported by the Defendants singly, jointly[,] or in the alternative." (Compl. ¶ 23.)

## **Procedural Background**

This action was filed on April 28, 2019 (Dkt. 1), and assigned to the Honorable George B. Daniels, U.S.D.J. The initial Complaint named only Alliance as a defendant, seeking to recover alleged short-swing profits under § 16(b) of the Securities and Exchange Act of 1934. (SOF ¶ 9; Dkt. 1.) Before Alliance could respond to Microbot's Complaint, Microbot filed an Amended Complaint on June 5, 2019 (Dkt. 13), in which

Microbot reasserted its § 16(b) claim but added a claim for injunctive relief under § 13(d) of the Act.[4]  (SOF ¶ 10.)  Then, on August 6, 2019, Microbot and Alliance appeared before the Court for an initial pretrial conference, during which defense counsel for the first time and on the record informed the Court that Alliance had made a filing mistake and that Defendant Joseph Mona, not Alliance, was the beneficial owner of the shares at issue in this case.  (SOF ¶ 15.)  Alliance filed its Answer on August 16, 2019, averring that it had made mistaken filings, that it formally requested the removal of its filings, and that the SEC was already acting on Alliance's request.  (Dkt. 21 ¶ 3.)

On September 9, 2019, Alliance served responses to Microbot's first set of interrogatories, signed by Alliance's CEO Peter Chin, objecting to each and every interrogatory on the basis that Alliance "is not now and never has been the beneficial owner of Microbot Medical Inc. securities at issue in this case and that, having corrected its SEC filings . . . is no longer the proper recipient of discovery in this action as the action relates solely to the trading conducted by a non-party, Joseph Mona."  (SOF ¶ 18; Def. Decl. at Ex. 6.)  That same day, Alliance served its responses to Microbot's first set of document requests, objecting to each and every document request because "Alliance . . . is not the proper defendant in this case because it is merely a broker" and

---

[4] Section 13(d) requires a person or group of persons acquiring beneficial ownership of more than 5% of a voting class of a company's equity securities registered under § 12 of the Act to file a Schedule 13D with the SEC reporting the acquisition and other information (such as the filer's identity, funding, and purposes) within ten days after the purchase.  *See Schedule 13D*, SEC, https://www.sec.gov/fast-answers/answerssched 13htm.html (last visited Aug. 18, 2020).  The SEC rules define a "beneficial owner" of a security as any person who has "[v]oting power which includes the power to vote, or to direct the voting of, such security; and/or [i]nvestment power which includes the power to dispose, or to direct the disposition of, such security."  17 C.F.R. § 240.13d-3(a)(1)-(2).  Microbot sought to enjoin Alliance to file a Schedule 13D covering the period between July 2, 2018 (when Alliance last made such a filing) and January 16, 2019 (when Alliance claimed to have liquidated its Microbot position).  (Dkt. 13 ¶¶ 27-28.)

that "[w]hile it filed certain SEC forms that indicate to the contrary, those forms were filed in error"; Alliance also stated that it "never had voting control []or a pecuniary interest in the shares at issue" and that Microbot's efforts to obtain material relevant only to a contemplated action against a non-party were improper.  (SOF ¶ 19; Def. Decl. at Ex. 7.)   Alliance ultimately produced to Microbot the Monas' original account agreement and certain month-end account statements on October 21, 2019.  (SOF ¶ 20; Def. Decl. at Ex 3.)   Nevertheless, on October 25, 2019, Microbot filed a letter motion for discovery to compel production of Mona's trading records "in exculpation of [Alliance's] liability."  (SOF ¶ 25; Dkt. 37.)

On October 29, 2019, Alliance filed its response to Microbot's letter motion, again arguing that the documents produced and public filings made by both Alliance and Mona "unequivocally preclude[ed] the possibility that *Alliance*, the sole defendant in this case" has ever been a beneficial owner of Microbot stock under § 16(b) of the Act. (SOF ¶ 26; Dkt. 39.)   That same day, Alliance filed a motion for summary judgment. (SOF ¶ 27; Dkt. 38.)

Microbot and Alliance attended a telephonic discovery conference before the undersigned on November 7, 2019.  In an Order issued that same day, the Court granted Microbot's request for Alliance to produce "complete trading records (as distinct from monthly trading statements)" as well as Microbot's request to file a second amended complaint in order to add Joseph Mona as a Defendant; at the same time, however, the Court advised Microbot that "Plaintiff will have to make its own determination as to whether it has a good faith basis to maintain Alliance Investment Management, Ltd. as a defendant; and, if not, whether Plaintiff can in good faith

proceed with amending the current complaint or instead will need to take some other action." (SOF ¶¶ 28-29; Dkt. 41.)

Soon afterward, on November 13, 2019, Alliance produced to Microbot 20 pages of detailed trading records setting forth every trade in Microbot securities made by Mona through his Alliance brokerage account between December 2016 and February 2019. (SOF ¶ 30.) Mona's trades were identified by his Alliance account number, and the trading records themselves were verified by Alliance CEO Peter Chin. (SOF ¶¶ 30-31; Def. Decl. at Ex. 15-16.) In a declaration, Chin averred that the records were downloaded directly from Alliance's account and trading software; were a true, accurate, and complete record of Mona's trading history in Microbot securities during the alleged short-swing period; and that Mona had only one brokerage account with Alliance. (SOF ¶ 31; Def. Decl. at Ex. 16 ¶¶ 3-5.) Although in receipt of these trading records, Microbot filed its Second Amended Complaint on November 18, 2019, dropping its § 13(d) claim but now naming both Alliance and Mona as defendants liable "singly, jointly, or in the alternative." (SOF ¶ 32; Compl. ¶ 16.) Microbot maintained that it would "need to discover the respective pecuniary interests of each of the Defendants, if any, and proceed against that or those Defendants to the extent thereof." (SOF ¶ 36; Compl. ¶ 16.)

On December 3, 2019, Alliance filed its Renewed Motion for Summary Judgment (Dkt. 45), which includes Alliance's Memorandum in Support of Defendant's Renewed Motion for Summary Judgment ("Def. Mem.") (Dkt. 45-1); Alliance's unopposed Rule 56.1 Statement of Undisputed Material Facts ("Statement of Undisputed Material Facts" or "SOF") (Dkt. 45-2); and the Declaration of Danielle M. McLaughlin in Support of

Defendant's Renewed Motion for Summary Judgment ("Def. Decl.") (Dkt. 45-3), attaching among other things Alliance's productions to Microbot (Def. Decl. at Ex. 1-3), Alliance's now removed SEC filings (Def. Decl. at Ex. 4-5), Mona's SEC filings (Def. Decl. at Ex. 8-11), Alliance's Verified Responses to Microbot's First Set of Interrogatories (Def. Decl. at Ex. 6), Alliance's Response to Microbot's First Set of Document Requests (Def. Decl. at Ex. 7), Alliance's detailed records of Mona's trading activity (Def. Decl. at Ex. 15), and the Declaration of Peter Chin (Def. Decl. at Ex. 16).

Days later, on December 7, 2019, Microbot moved to compel Alliance to confirm that Mona's account was the only brokerage account at Alliance in which Microbot shares were traded during the alleged short-swing period; or to produce trading records for such other accounts.  (Dkt. 50.)  In its response filed December 11, 2019, Alliance confirmed for the Court that as of December 9, 2019, the SEC had finally removed Alliance's erroneous filings from EDGAR.  (Dkt. 52.)  The next day, the Court issued an Order staying discovery pending resolution of Alliance's summary judgment motion. (Dkt. 53.)

On January 6, 2020, Microbot filed its motion for sanctions under Rule 11 of the Federal Rules of Civil Procedure, alleging that Alliance's summary judgment motion was improperly intended to prevent discovery from running its course.  (Dkt. 54)  Alliance filed its own sanctions motion on February 7, 2020 (Dkt. 60), amended on February 26, 2020 (Dkt. 69), claiming that once the SEC removed Alliance's erroneous filings from EDGAR, the entire factual basis of Microbot's § 16(b) case was also removed; and that Microbot's sanctions motion contained both material misrepresentations of fact (that Alliance's mistaken filings were still available on EDGAR as of January 6, 2020, the

filing date of Microbot's sanctions motion) and misstatements of law (that there is no case law to support Alliance's proposition that SEC filings are to be treated as affidavits and accepted for the truth of their contents).  (Dkt. 69 at 5-8.)

In the discussion that follows, the Court will attend first to the summary judgment motion before addressing the sanctions motions.

## MOTION FOR SUMMARY JUDGMENT

In its Renewed Motion for Summary Judgment, Alliance argues that because liability under Section 16(b) requires beneficial owner status, there is but one, "sole dispositive material fact:" that Alliance was not a beneficial owner of Microbot stock who engaged in prohibited transactions during the relevant statutory period.  (Def. Mem. at 14.)  In opposition, Microbot argues that "there remains open one or more unsettled issues of material fact" but does not articulate what those may be; instead, Microbot calls them "the subject of pending discovery requests that preclude the availability . . . of summary judgment . . . ."  (Memorandum in Support of Plaintiff's Motion under Fed. R. Civ. P. 56(d) for Deferral of Consideration or Denial of Defendant Alliance Investment Management Ltd.'s Motion for Summary Judgment of Dismissal as to It and for the Taking of Specific Discovery ("Pl. Mem."), Dkt. 55, at 2-3.[5])  Alliance's summary judgment motion should be granted.

---

[5] In a joint letter in response to the Court's Order to identify for the Court the parties' briefings, Microbot and Alliance designated Microbot's memorandum at Dkt. 55 as Microbot's opposition to Alliance's Renewed Motion for Summary Judgment.  Included alongside Microbot's memorandum is an Affirmation in Support of Plaintiff's Motion under Fed. R. Civ. P. Rule 56(d) for Deferral of Consideration or Denial of Defendant Alliance Investment Management Ltd.'s Motion for Summary Judgment of Dismissal as to It and for the Taking of Specific Discovery, which the Court will treat as Microbot's declaration filed to show that, "for specific reasons, it cannot present facts essential to justify its opposition" ("Pl. Decl.").  Fed. R. Civ. P. 56(d).

## Legal Standard for Summary Judgment

The standard for summary judgment is well settled.  Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  The moving party bears the initial burden of proving that there is no genuine issue of material fact.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

Once the moving party has met its burden, the nonmoving party "must come forward with specific facts showing that there is a genuine issue for trial."  *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* (quoting *Matsushita*, 475 U.S. at 586).  And, the nonmoving party "may not rely on conclusory allegations or unsubstantiated speculation."  *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001) (quoting *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998)).  Rather, the nonmoving party must produce admissible evidence that supports its pleadings; "the mere existence of a scintilla of evidence supporting the non-movant's case," however, is "insufficient to defeat summary judgment."  *NEM Re Receivables, LLC v. Fortress Re, Inc.*, 173 F. Supp. 3d 1, 5 (S.D.N.Y. 2016) (internal citations and quotations omitted).  If the evidence advanced by the nonmoving party "is merely colorable, or is not significantly probative, then summary judgment may be granted."  *Anderson*, 477 U.S. 242, 249-50.

In ruling on a motion for summary judgment, the Court must resolve any ambiguity in favor of the nonmoving party.  *Coyle v. United States*, 954 F.3d 146, 148 (2d Cir. 2020).  The Court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments . . . ."  *Weyant v. Okst,* 101 F.3d 845, 854 (2d Cir. 1996).  As a result, summary judgment will not issue where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson,* 477 U.S. at 248.  But "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial."  *Matsushita,* 475 U.S. at 587 (1986) (internal citations and quotations omitted).

<u>Discussion</u>

**A.      Alliance Has Demonstrated Indisputably That It Was Not a Beneficial Owner of the Stock at Issue.**

The purpose of § 16(b) of the Act is to prevent a beneficial owner of more than 10% of any class of equity security from unfairly using information that he may have obtained by virtue of his relationship with the issuer, by disgorging "any profit realized by him from any purchase and sale, or any sale and purchase, of any equity security of such issuer . . . within any period of less than six months."  15 U.S.C. § 78p(b).  Such a statutory insider is required to promptly disclose any prohibited transactions to the SEC on Forms 3, 4, and 5, which must set forth the beneficial owner's name, trading record, and amount of securities owned.  15 U.S.C. § 78p(a)(2)-(3).

As the moving party, Alliance bears the burden of demonstrating that there is no genuine issue of material fact.  *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d

Cir. 2002).   Alliance can satisfy that burden by showing that even just one essential element of Plaintiff's claim is absent.   *Nick's Garage, Inc. v. Progressive Casualty Insurance Company*, 875 F.3d 107, 114 (2d Cir. 2017) (quoting *Faird v. Smith*, 850 F.2d 917, 924 (2d Cir. 1988)).   Accordingly, Alliance is correct that its motion can turn on the sole issue of whether or not it was a beneficial owner, either individually or jointly with Mona.   And so it does.

Alliance offers several pieces of evidence proving that Mona, not Alliance, was the beneficial owner of the stock at issue.   These exhibits include (1) Mona's SEC filings (Def. Decl. at Ex. 8, 9, 11); (2) Alliance's detailed records of Mona's trading activity (Def. Decl. at Ex. 15); and (3) Alliance's responses to Microbot's interrogatories (Def. Decl. at Ex. 6).   Also in the record are (4) the results of an EDGAR search conducted by Alliance and (5) Alliance's email correspondence with the SEC regarding its filings.[6]   Alliance has met its burden.

---

[6] Alliance does not cite to these search results or correspondence in its summary judgment brief.   Nor is either attached as an exhibit to Alliance's declaration.   Rather, both are attached as exhibits to Alliance's sanctions motion, filed two weeks after its summary judgment motion.   (*See* Dkt. 54; Dkt. 71 at Ex. 2-3.)   However, "[e]ven in deciding a motion for summary judgment, which can result in a final decision on the merits, a district court is not limited to consideration of evidence specifically brought to its attention by the parties in the briefing on the summary judgment motion." *Chevron Corp. v. Donzinger*, No. 11 Civ. 0691, 2013 WL 1975439, at *2 (S.D.N.Y. May 14, 2013) (citing Fed. R. Civ. P. 56(c)(3)).   In fact, the Court "may rely on 'any material that would be admissible' at a trial." *Lyon v. Lancer Insurance Co.*, 681 F.3d 50, 57 (2d. Cir. 2012) (quoting *Major League Baseball Properties, Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir.2008)).   Specifically, the Court may consider all papers of record in addition to the pleadings and any affidavits or declarations prepared for the motion. *See United States v. United States Gypsum Co.*, 340 U.S. 76 (1950) (granting summary judgment in favor of the government on a record consisting of the law as decided by the Supreme Court, the record of the prior trial, and defendants' admissions).   Accordingly, the Court may and will consider this evidence.   That said, the Court would reach the same conclusion even without the additional items.

Again, the parties do not dispute that shortly after Microbot filed its Complaint, Alliance submitted a formal request to the SEC to remove Alliance's filings from EDGAR; and that in this request Alliance explained to the SEC that its client (i.e., Joseph Mona) was "the actual beneficial owner" of Microbot shares.  (SOF ¶ 16.)  The SEC acted accordingly and, as confirmed in an email from the SEC, expunged the errant filings from EDGAR.  (Dkt. 71 at Ex. 3.)  Consequently, Alliance's EDGAR search results for all filings related to "Microbot Medical Inc. CIK#:  0000883975" as of January 13, 2020 (when Alliance conducted its search) yielded no Forms 3 or 4 filed on January 17, 2019 – by Alliance or anyone else.  (Dkt. 71 at Ex. 2.)

Nor do the parties dispute that Mona has made filings of his own indicating that he owned the same amount of shares and made the same trades that Alliance had "earlier and erroneously" attributed to itself.[7]  (SOF ¶¶ 21-24.)   Mona's filings only further confirm what Alliance repeatedly attests to in its responses to Microbot's interrogatories:  Alliance has "corrected" its filings and "is not now and never has been

---

[7] A comparison of Mona's SEC filings with Alliance's now removed SEC filings reveals that Mona reported owning 300,320 shares of Microbot common stock, the exact same amount of shares that had qualified Alliance for beneficial ownership status.  Mona also disclosed executing the exact same prohibited transactions that Alliance had taken credit for.  For instance, Alliance had reported a November 21, 2018 purchase of 24,873 shares of Microbot common stock at an average price of $2.21 per share and a November 21, 2018 sale of 6,309 shares of Microbot common stock at an average price of $2.96 per share; Mona disclosed the same in his filing.  (*Compare* Def. Decl. at Ex. 8, 9, 11, *with* Def. Decl. at Ex. 4-5.)  It helps that Alliance's detailed records of Mona's trading activity match up exactly with Mona's disclosures in regard to transaction date, amount of shares bought or sold, and average share price.  (*Compare* Def. Decl. at Ex. 15, *with* Def. Decl. at Ex. 8, 9, 11.)  And, as Alliance correctly observes, Mona could have disavowed beneficial ownership status in his filings if he wanted, but he did not do so.  *See Morales v. Quintel Entertainment, Inc.*, 249 F.3d 115, 129 (2d Cir. 2001) ("Any person may expressly declare in any statement filed that the filing of such statement shall not be construed as an admission that such person is, for the purposes of sections 13(d) or 13(g) of the Act, the beneficial owner of any securities covered by the statement") (citing 17 C.F.R. § 240.13d-4).

the beneficial owner of Microbot Medical Inc. securities at issue in this case." (Def. Decl. at Ex. 6.)   The evidence put forth by Alliance indisputably demonstrates that Alliance was not a beneficial owner of the shares at issue.

Microbot nevertheless could avoid summary judgment if it can present "specific facts showing that there is a genuine issue for trial" with respect to beneficial ownership. *Parker v. Sony Pictures Entertainment, Inc.*, 260 F.3d 100, 111 (2d. Cir. 2001) (quoting *Celotex*, 477 U.S. at 324).   But Microbot fails to do so.   As noted, Microbot submitted no responsive statement to Alliance's statement of undisputed facts.   Alliance's factual statements stand unrefuted.   Indeed, in opposition to Alliance's motion, Microbot nowhere cites to or proffers specific facts demonstrating that there remain any genuine issue for trial regarding beneficial ownership.[8]

Rather, Microbot invites "the court or any member of the general public . . . to consult the SEC's EDGAR filing system online today [and] it or they would find Form 3 and Form 4 reports evidencing insider status and short-swing trading by Alliance as described in the complaint." (Pl. Mem. at 2.)   The Court followed up on that invitation. Entering "Microbot" into EDGAR's Company and Person Lookup leads the Court to the filings page of "Microbot Medical Inc. CIK#: 0000883975."[9]   After filtering the search results to include only filings related to ownership (i.e., Forms 3, 4, and 5), the Court notes that there are no filings for January 17, 2019, the date on which Microbot alleges

---

[8] Microbot does cite to Dkt. 52 at Ex. 1, but that is simply a list of fill-in-the-blank questions and statements the truth of which Microbot had wanted Alliance to affirm – which it did not – before the Court stayed discovery pending resolution of Alliance's summary judgment motion.

[9] EDGAR Search Results for "Microbot Medical Inc. CIK#: 0000883975," SEC, https://www.sec.gov/cgi-bin/browse-edgar?action=getcompany&CIK=0000883975& type=&dateb=&owner=only&count=40 (last visited Aug. 18, 2020).

that Alliance filed Forms 3 and 5 disclosing beneficial ownership and prohibited transactions.  Regardless whether results of Microbot's invitation can be considered as admissible evidence, Microbot has not provided anything to contradict Alliance's proof that the SEC has removed its records of the errant listing of Mona's trades as those of Alliance, and subsequently has posted records of the same trades in Mona's name. (Dkt. 71 at Ex. 2-3; SOF ¶¶ 21-24.)

Instead of producing admissible evidence or designating specific facts, Microbot argues that the exhibits attached to Alliance's declaration do not show that Mona, rather than Alliance, was the beneficial of Microbot stock; instead, Microbot contends, they "provide a partial evidentiary basis for implicating [Mona] as having transactions that mimic the reported transactions of [Alliance]" and raise "the possibility of duplicative transactions for the benefit of Alliance or of any other client whose account is managed by Alliance and in which Alliance might share an opportunity to profit."  (Pl. Mem. at 2.) That is a fanciful and speculative theory – Microbot concedes as much characterizing it merely as a "possibility" unsupported with facts.  Such "conclusory allegations" and "unsubstantiated speculation" are hardly sufficient to avoid summary judgment.  *Fujitsu Ltd.*, 247 F.3d at 428.  In short, Alliance has demonstrated the absence of disputed material fact regarding its alleged beneficial ownership.  That is case dispositive and entitles Alliance to summary judgment.

## B.     The Court's Rule 56(d) Discretion

In an effort to forestall summary judgment, Microbot argues that further discovery is needed before the Court rules on summary judgment.  That, however, would be a

fruitless endeavor as Microbot has not articulated how discovery could lead to any additional relevant facts on the dispositive issue of beneficial ownership.

Pursuant to Rule 56(d) of the Federal Rules of Civil Procedure, the Court may defer the moving party's motion or deny it, lift its stay on discovery, or issue any other appropriate order if the nonmoving party shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition.  Fed. R. Civ. P. 56(d).  A party seeking to delay resolution of a summary judgment motion based on the need for discovery materials "'must show that the material sought is germane to the [claim], and that it is neither cumulative nor speculative, and a bare assertion that the evidence supporting a plaintiff's allegation is in the hands of the defendant is insufficient.'"  *Alphonse Hotel Corporation v. Tran*, 828 F.3d 146, 151 (2d. Cir. 2016) (quoting *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1138 (2d Cir. 1994)).  The party must explain with specificity "how the facts sought are reasonably expected to create a genuine issue of material fact."  *Id.* (quoting *Paddington Partners*, 34 F.3d at 1138).  "[B]are, generalized assertions cannot justify delaying the resolution of a summary judgment motion."  *Id.* at 152.

Here, Microbot declares only that "Plaintiff . . . moved [the Court] to compel specific factual declarations (Docket # 50) necessary to address the Defendant's motion for summary judgment" and "Plaintiff is now moving to have [the Court] allow the discovery thus stayed to proceed in order to enable Plaintiff to oppose Alliance's motion for summary judgment and is moving pursuant to F.R.C.P. Rule 56(d)(1) to defer consideration of the motion or to deny it to allow time to complete the discovery described at . . .  (Docket # 50)."  (Pl. Decl. ¶¶ 6, 9.)  But Microbot does not show or

even attempt to show how the material sought is germane and neither cumulative nor speculative; instead, Microbot puts forward "bare, generalized assertions" that the evidence it needs is in Alliance's hands.  *Alphonse Hotel Corporation*, 828 F.3d at 152.

"Docket # 50," which Microbot references in its bid for further discovery, is a December 7, 2019 letter motion to compel Alliance to complete the "fill-in-the-blank" statement mentioned above.   In that letter, Microbot contends that further discovery is needed because the Chin Declaration (Def. Decl. at Ex. 16) "does not confirm that the Mona account was the only Alliance account in which Microbot securities were traded," or that "the trades executed in the Mona account were not also executed by Alliance, or in another Alliance-managed account . . . , as may otherwise be suggested by their combined SEC filings."  (Dkt. 50.)  Microbot completely glosses over, however, Chin's earlier responses to Microbot's interrogatories, in which he repeatedly avowed that Alliance "is not now and never has been the beneficial owner of Microbot Medical Inc. securities at issue in this case" – in other words, "the trades executed in the Mona account were not also executed by Alliance," which is exactly the information that Microbot seeks.  (Def. Decl. at Ex. 16.)  As to "another Alliance-managed account" or accounts owned by other Alliance clients, those have nothing to do with Microbot. Microbot did not then, and does not now, explain how further discovery would show that *Alliance* was a beneficial owner of Microbot stock that engaged in prohibited transactions during the relevant statutory period.

The Court fully appreciates that summary judgment is a "drastic device." *Association of Car Wash Owners Inc. v. City of New York*, 911 F.3d 74, 83 (2d. Cir. 2018) (quoting *National Life Insurance Co. v. Solomon*, 529 F.2d 59, 61 (2d Cir. 1975)).

Indeed, the Second Circuit has often vacated district court orders granting summary judgment where summary judgment was entered before any discovery had taken place. *See id.* (collecting cases). The question here, however, is whether Microbot has had "an opportunity to discover information that is essential to [its] opposition" and whether that opportunity was "fully adequate." *Negrete v. Citibank, N.A.*, No. 15 Civ. 7250, 2016 WL 67788, at *1 (S.D.N.Y. Jan. 5, 2016) (first quoting *Hellstrom v. U.S. Department of Veterans Affairs*, 201 F.3d 94, 97 (2d Cir. 2000); and then quoting *Berger v. United States*, 87 F.3d 60, 65 (2d Cir. 1996); *Sereika v. Patel*, 411 F. Supp. 2d 397, 405 (S.D.N.Y. 2006)). The answer is unequivocally yes.

Microbot has had a full and fair opportunity to conduct discovery; that discovery has yielded among other things Mona's account application and customer agreement (Def. Decl. at Ex. 3-1 to 3-2), Mona's month-end account statements and Alliance's detailed records of Mona's trading activity (Def. Decl. at Ex. 3-3, 15), as well as responses to interrogatories verified by Alliance's own CEO (Def. Decl. at Ex. 6) – all of which stand beside Alliance and Mona's publicly accessible SEC filings. Additional discovery will not serve any useful purpose. Accordingly, the Court should decline to exercise its discretion under Rule 56(d) to defer consideration of Alliance's summary judgment motion and should grant summary judgment in favor of Alliance dismissing Microbot's claims against Alliance with prejudice.

## **CROSS-MOTIONS FOR SANCTIONS**

The parties have filed cross-motions for Rule 11 sanctions related to the same beneficial-owner issue determined on summary judgment. On the one hand, Microbot alleges that Alliance filed its Renewed Motion for Summary Judgment for an "improper

motive," to prevent discovery from running its course – that is, "harassment, delay, needless increase in the cost of litigation." (Memorandum in Support of Plaintiff's Motion for Sanctions under Rule 11, Fed. R. Civ. P. ("Pl. Sanctions Mem."), Dkt 54, at 2, 4; *see also* Fed. R. Civ. Proc. 11(b)(1).) Microbot seeks $1.00 in damages and asks the Court to admonish Alliance. (Pl. Sanctions Mem. at 4.)

On the other hand, Alliance claims that Microbot's sanctions motion and deferral motion were filed "for the improper purpose of harassment and delay," and make legal arguments unwarranted by existing law as well as factual contentions lacking evidentiary support. (Memorandum of Law in Support of Motion for Sanctions under Fed. R. Civ. P. 11 ("Def. Sanctions Mem."), Dkt. 69, at 3; *see also* Fed. R. Civ. Prof. 11 (b)(1)-(3).) Alliance seeks attorneys' fees and costs incurred in defending this action since December 11, 2019, the date on which Alliance notified Microbot that the SEC had finally taken down Alliance's mistaken filings, upon which Alliance argues Microbot should have dismissed it from this case with prejudice. (Def. Sanctions Mem. at 9.) Both sanctions motions should be denied.

## Rule 11 Legal Standards

"[T]he central purpose of Rule 11 is to deter baseless filings in district court and thus . . . streamline the administration and procedure of the federal courts." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990). Rule 11 accomplishes this objective by authorizing courts to impose sanctions "when court filings are used for an 'improper purpose,' or when claims are not supported by existing law, lack evidentiary support, or are otherwise frivolous." *Ipcon Collections LLC v. Costco Wholesale Corp.*, 698 F.3d 58, 63 (2d Cir. 2012) (citing Fed. R. Civ. Proc. 11(b)-(c)). Rule 11 "is targeted at

situations 'where it is patently clear that a claim has absolutely no chance of success under the existing precedents, and where no reasonable argument can be advanced to extend, modify[,] or reverse the law as it stands.'" *Rodick v. City of Schenectady*, 1 F.3d 1341, 1350 (2d Cir. 1993) (quoting *Associated Indemnity Corp. v. Fairchild Industries, Inc.*, 961 F.2d 32, 34 (2d Cir. 1992)). "With respect to factual contentions, 'sanctions may not be imposed unless a particular allegation is utterly lacking in support.'" *StreetEasy, Inc. v. Chertok*, 752 F.3d 298, 307 (2d Cir. 2014) (quoting *Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370, 388 (2d Cir.2003)).

Whether an attorney's litigation conduct is reasonable "should be determined without the benefit of hindsight, based on what was objectively reasonable to believe at the time the pleading, motion[,] or other paper was submitted." *Jeffreys v. Rossi*, 275 F. Supp. 2d 463, 479-80 (S.D.N.Y. 2003). In making these determinations, "all doubts should be resolved in favor of the signing attorney." *K.M.B. Warehouse Distributors, Inc. v. Walker Manufacturing Co.*, 61 F.3d 123, 131 (2d Cir. 1995).

Even where a court finds that Rule 11 has been violated, "the decision whether or not to impose sanctions is a matter for the court's discretion." *Perez v. Posse Comitatus*, 373 F.3d 321, 325 (2d Cir. 2004); *see also Ipcon Collections*, 698 F.3d at 63 ("Sanctions may be – but need not be – imposed when court filings are used for an 'improper purpose,' or when claims are not supported by existing law, lack evidentiary support, or are otherwise frivolous"). In exercising that discretion, "a district court is obligated to exercise caution and restraint." *Kingvision Pay-Per-View Ltd. v. Ramierez*, No. 05 Civ. 2778, 2005 WL 1785113, at *4 (S.D.N.Y. July 28, 2005). Indeed, it is well settled that the imposition of sanctions is reserved for "extreme cases." *Sorenson v.*

*Wolfson*, 170 F. Supp. 3d 622, 626 (S.D.N.Y. 2016), *aff'd*, 683 F. App'x. 33 (2d Cir. 2017); *see also Galin v. Hamada*, 283 F. Supp. 3d 189, 201 (S.D.N.Y. 2017) ("Courts have cautioned litigants that Rule 11 sanctions are reserved for extraordinary circumstances") (citation omitted).

<u>**Discussion**</u>

**A.    Microbot's Motion for Sanctions Should be Denied**

Microbot accuses Alliance of "[t]he making of repeated motions for summary judgment without first making a good faith effort to allow discovery to run its course . . . for harassment of the Plaintiff and for unnecessary delay and needless increase in the cost of litigation." (Pl. Sanctions Mem. at 2.) The question is whether Alliance's filing of its Renewed Motion for Summary Judgment was objectively reasonable. *Jeffreys*, 275 F. Supp. 2d at 479-80. In answering this question, the Court resolves all doubts in Alliance's favor. *K.M.B. Warehouse Distributors, Inc.*, 61 F.3d at 131.

Microbot has not come close to laying the groundwork for imposition of sanctions. Microbot points to no facts to aid the Court in its inquiry; Microbot simply argues that "for many months . . . despite the repeated requests by Microbot's counsel for the entry onto the record of admissible evidence – e.g., affidavits or affirmances responsive to Microbot's concerns – none have been forthcoming . . . ." (Pl. Sanctions Mem. at 3.) It is an undisputed fact, however, that Alliance has served responses to Microbot's interrogatories, verified by Alliance's CEO Peter Chin, in which Chin averred "with knowledge of the SEC filings at issue" that Alliance "is not now and never has been the beneficial owner of the Microbot Medical Inc. securities at issue in this case." (SOF ¶ 18; Def. Decl. at Ex. 6.) It is also an undisputed fact that Alliance has produced

to Microbot the Monas' account application, customer agreement, and month-end account statements; as well as detailed records of Mona's trading activity, which identify his trades by his account number (previously disclosed to Microbot) and set forth every trade in Microbot securities made by Mona through his account during the relevant statutory period.  (SOF ¶¶ 20, 30; Def. Decl. at Ex. 3-1 to 3-3, 15.)

Discovery has borne fruit that leaves a bad taste in Microbot's mouth.  But that does not justify Microbot's accusation that Alliance filed its summary judgment motion simply to block discovery and vex Microbot.  In light of the evidence produced as well as Alliance's insistence that it has never been a beneficial owner of Microbot shares (and that Microbot therefore has no § 16(b) claim against it), Alliance's filing of a renewed summary judgment motion was objectively reasonable.  Indeed, that motion should be granted as set forth above.  Microbot's sanctions motion should be denied.

**B.    Alliance's Motion for Sanctions Should be Denied**

Reacting to Microbot's sanctions motion, Alliance alleges that Microbot filed its sanctions and deferral motions "for a singular improper purpose:  To prolong the litigation against Alliance"; furthermore, "Plaintiff has made material misrepresentations" therein and "certain legal arguments contained therein are unwarranted by existing law." (Def. Sanctions Mem. at 2-3.)  Resolving all doubts in Microbot's favor, the question for the Court is whether Microbot's conduct was objectively reasonable.   *K.M.B. Warehouse Distributors, Inc.*, 61 F.3d at 131; *Jeffreys*, 275 F. Supp. 2d at 479-80.  The Court must be able to ascertain that Microbot's factual allegations were "utterly lacking in support."  *StreetEasy, Inc.*, 752 F.3d at 307.

Alliance points to two alleged misrepresentations made by Microbot:  "If the court is of a mind to go today to the SEC EDGAR database at SEC.gov and run a Boolean search of 'Alliance and Microbot' the court will find filings made by Alliance and extant today reporting its more than 10% beneficial ownership and its trading activities in shares of the Plaintiff as pleaded in the Second Amended Complaint"; and "If the court or any member of the general public were to consult the SEC's EDGAR filing system online today it or they would find Form 3 and Form 4 reports evidencing insider status and short-swing trading by Alliance as described in the complaint."  (Def. Sanctions Mem. at 5 (first quoting Pl. Sanctions Mem. at 2-3; and then quoting Pl. Mem. at 2).)

Alliance claims that Microbot knew that these statements were false when it made them because Alliance had notified Microbot, in its December 11, 2019 response to Microbot's letter motion to compel (Dkt. 52), that the SEC had finally removed Alliance's erroneous filings from EDGAR as of December 9, 2019.  (Def. Sanctions Mem. at 6.)  In that response, however, Alliance provided no proof that the SEC had in fact acted on its takedown request by that time such as a confirmation email from the SEC or a printout of EDGAR search results from December 11, 2019.  (*See* Dkt. 52.) Nor can Alliance travel back in time to January 6, 2020, the date on which Microbot filed its sanctions and deferral motions, and conduct an EDGAR search to show that (1) Alliance's filings had been removed by then and that (2) Microbot therefore knowingly made false allegations in those motions.[10]  Resolving all doubts in Microbot's favor, as it

---

[10] Alliance attaches as an exhibit to its sanctions motion "results of Boolean search of 'Alliance and Microbot' dated January 13, 2020" and "results of EDGAR company search including all filings for January 2019 dated January 13, 2020."  (Dkt. 71 at Ex. 1-2.)  However, January 13, 2020 is not January 6, 2020; again, Microbot filed its motions on January 6, 2020.  (*See* Pl. Sanctions Mem. at 2-3 ("If the court is of a mind to go

must, the Court finds that Alliance has not met its burden to show that sanctions are warranted with respect to the allegedly false statements or their being a basis for Microbot's motions.

Alliance also claims that Microbot's "legal argument [in its sanctions motion] is not warranted by existing law."  (Def. Sanctions Mem. at 8.)  In its memorandum in support of its summary judgment motion, Alliance had argued that an SEC filing was "to be treated as the equivalent of an affidavit and accepted for the truth of its content."  (Pl. Sanctions Mem. at 3; *see* Def. Mem. at 12.)  In its sanctions motion, Microbot retorted, "For this contention no authority is cited because there is none."  (Pl. Sanctions Mem. at 3.)  Alliance now points to the text of its supporting memorandum, where it did in fact cite and even quoted case law to make its argument:  "These forms [SEC Forms 3, 4, and 5] are 'filed with the SEC under penalty of perjury' and are 'routinely accepted by courts on motions to dismiss securities fraud complaints and are considered for the truth of their contents.'  *Malin v. XL Capital Ltd.*, 499 F. Supp. 2d 117, 132 (D. Conn. 2007), *aff'd*, 312 F. App'x 400 (2d Cir. 2009) (internal citation omitted)."[11]  (Def. Sanctions Mem. at 8; *see also* Def. Mem. at 12.)

As the Second Circuit explains, "[m]erely incorrect legal statements are not sanctionable under Rule 11(b)(2).  Rather, sanctionable 'legal contentions' must not be

---

today to the SEC EDGAR database . . ."); Pl. Mem. at 2 ("If the court or any member of the general public were to consult the SEC's EDGAR filing system online today . . .").)  Also attached as an exhibit to Alliance's sanctions motion is a "December 9, 2019 email from Thomas Sanders, SEC, to Danielle McLaughlin confirming deletion of the Alliance Filing."  (Dkt. 71 at Ex. 3.)  But Alliance does not say whether it transmitted this email to Microbot on or before January 6, 2020, which it must have done to show knowledge on Microbot's part.

[11] The correct pincite where the quoted language appears is 133, not 132.

'warranted by existing law . . . .'"  *Storey v. Cello Holdings LLC*, 347 F.3d 370, 391 (2d Cir. 2017) (quoting Fed. R. Civ. P. 11(b)(2)).  Microbot's statement meets that standard. Microbot contends that there exists no case law to support Alliance's argument.  That is demonstrably incorrect and not warranted by existing law.  The reason is obvious: Alliance quotes directly from the existing case law to make its point.  If Microbot had undertaken a reasonable inquiry – here, reading Alliance's memorandum in the first place and then checking whether *Malin* truly exists, whether Alliance properly quoted *Malin*, whether *Malin* actually stands for what Alliance claims that it stands for, whether *Malin* has been overruled on the grounds Alliance is citing it for, etc. – Microbot would have realized within minutes that there was in fact case law supporting Alliance's proposition.  Microbot's conduct was objectively unreasonable.

Nevertheless, mindful that sanctions are reserved for "extreme cases" and "extraordinary circumstances," the Court should decline to impose sanctions on Microbot.  *Sorenson*, 170 F. Supp. 3d at 626; *Galin*, 293 F. Supp. 3d at 201.  Among the factors to be considered by the Court in deciding whether to levy sanctions are "(1) whether the improper conduct was willful, or negligent; (2) whether it was part of a pattern o[f] activity, or an isolated event; (3) whether it infected the entire pleading, or only one particular count or defense; (4) whether the person has engaged in similar conduct in other litigation; (5) what effect it had on the litigation process in time or expense; (6) whether the responsible person is trained in the law; [and] (7) what amount, given the financial resources of the responsible person, is needed to deter that person from repetition in the same case."  *Ho Myung Moolsan Co. v. Manitou Mineral Water, Inc.*, 665 F. Supp. 2d 239, 265 (S.D.N.Y. 2009) (quoting *Colliton v. Cravath,*

*Swaine & Moore LLP*, No. 08 Civ 0400, 2008 WL 4386764, at *12 (S.D.N.Y. Sept. 24, 2008) (citing Fed. R. Civ. P. 11 advisory committee's note to 1993 amendment)).[12]

As Alliance suggests, "Perhaps Plaintiff[] did not read Alliance's Memorandum." (Def. Sanctions Mem. at 7-8).  This would be the most logical explanation, as what Microbot claims does not exist is right there on the page; and if Microbot did not believe what was right before its eyes, it should have conducted the appropriate due diligence. At most, however, Microbot's omission rises to the level of gross negligence, not willfulness.  Alliance also alleges that Microbot made material misrepresentations of fact in its sanctions and deferral motions, which would support a finding of a pattern of misbehavior on Microbot's part.  But, as discussed above, Alliance cannot show that Microbot's factual allegations were utterly lacking in support at the time it made them. Nor does Alliance point to Microbot engaging in similar misconduct in other litigation.

Finally, Microbot's transgression neither infected its entire sanctions motion nor influenced any part of the litigation process.  Because it is immediately evident that Microbot's argument was baseless, Alliance was able to readily rebut Microbot's argument by quoting from its memorandum, and the Court was able to properly evaluate the merits of Microbot's sanctions motion without being misled.  Of course, Microbot's counsel are trained in the law and should have known better.  But sanctions are not called for in this instance given the minor and inconsequential nature of Microbot's violation.  *See Olivieri v. Thompson*, 803 F.2d 1265, 1279 (2d Cir. 1986)

---

[12] "The rule does not attempt to enumerate the factors a court should consider in deciding whether to impose a sanction . . . .  [A]ll of the[] [factors set forth in the advisory committee's note] may in a particular case be proper considerations.  The court has significant discretion in determining what sanctions, if any, should be imposed for a violation . . . ."  Fed. R. Civ. P. 11 advisory committee's note to 1993 amendment.

(declining to impose sanctions where it was "doubtful whether anyone gave these claims serious consideration or devoted any significant work toward disposing of them"). This does not mean that Microbot escapes unscathed; the findings in this decision may be used in future litigation to demonstrate a potential pattern of sanctionable conduct.

## Conclusion

For the foregoing reasons, I recommend that Alliance's summary judgment motion be GRANTED dismissing Microbot's claims against Alliance with prejudice, and that both Microbot and Alliance's cross-motions for sanctions be DENIED.

## Procedures for Filing Objections

Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(d) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days to file written objections to this Report and Recommendation.  Such objections shall be filed with the Clerk of Court, with extra copies delivered to the Chambers of the Honorable George B. Daniels, 500 Pearl Street, New York, New York 10007, and to the Chambers of the undersigned, 500 Pearl Street, New York, New York 10007.  **FAILURE TO FILE TIMELY OBJECTIONS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.**

Respectfully submitted,

_____
ROBERT W. LEHRBURGER
UNITED STATES MAGISTRATE JUDGE

Dated:   August 18, 2020
         New York, New York

Copies transmitted to all counsel of record.