**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MICROBOT MEDICAL, INC.,                          :

                         Plaintiff,    :

       -against-                                       :

JOSEPH MONA,                                     :

                   Defendant.     :

 

 

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MEMORANDUM DECISION
AND ORDER

19 Civ. 3782 (GBD) (RWL)

GEORGE B. DANIELS, United States District Judge:

Plaintiff Microbot Medical, Inc. ("Microbot") brings this action to recover short-swing profits against Defendant Joseph Mona ("Mona"), pursuant to Section 16(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78p(b), alleging that Mona purchased and sold Microbot stock within a six month period while owning more than 10% of the company's stock. (Second Am. Compl. ("Complaint"), ECF No. 44, ¶¶ 1–3.) Microbot subsequently filed a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure ("Rule") 12(c) and a motion to dismiss Defendant's counterclaim pursuant to Rule 12(b)(6). (Not. of Pl.'s R. 12(c) Mot. for J. on the Pleadings; R. 12(b)(6) Mot. to Dismiss Def. Mona's Counterclaim, ECF No. 80.)

Before this Court is Magistrate Judge Robert W. Lehrburger's December 18, 2020 Report and Recommendation (the "Report"), recommending that (1) Microbot's motion for judgment on the pleadings and motion to dismiss Defendant's counterclaim be granted, (2) that this Court enter judgment in the amount of $484,614.30 in Microbot's favor, and (3) that Defendant Mona be granted leave to replead his Section 10(b) and Rule 10b-5 counterclaim as to certain alleged

misrepresentations. (Report, ECF No. 104, at 49–50.) Magistrate Judge Lehrburger advised the parties that failure to file timely objections to the Report would constitute a waiver of those objections on appeal. (*Id.*) Defendant Mona timely filed objections on January 4, 2021. (Def. Joseph Mona's Partial Obj. to Mag. J. Lehrburger's R. & R. ("Defs.' Obj."), ECF No. 105.) Having reviewed the Report, as well as Defendant's objections, this Court ADOPTS the Report and OVERRULES the objections.

## I.   FACTUAL BACKGROUND[1]

On November 18, 2019, Microbot filed the Complaint against Alliance Investment Management Ltd. ("Alliance")[2] and Joseph Mona, seeking to disgorge short-swing profits pursuant to Section 16(b) of the Securities Exchange Act. (Compl. ¶¶ 20–23.) Alliance alleges that Mona, while a beneficial owner of Microbot stock, engaged in transactions from November 19, 2018 to January 14, 2019 and realized short-swing profits as a result. (Compl. ¶¶ 14–15, 21–22; Exhibit A, at 6.)

On February 4, 2020, Mona filed an answer and counterclaim, alleging violations of Section 10(b) and Rule 10b-5. (Answer and Counterclaim of Def./Counterclaim Pl. Joseph Mona ("Counterclaim"), ECF No. 59.) Mona alleges that (1) Microbot made misrepresentations in its filings with the U.S. Securities and Exchange Commission ("SEC") regarding the sufficiency of its capital, (2) Harel Gadot, Microbot's Chief Executive Officer, misrepresented Microbot's sufficiency of capital during an investor call, (3) Gadot misrepresented that Microbot was five years ahead of its competition, (4) Gadot misrepresented that Microbot's shares were

---

[1] The relevant factual and procedural background is set forth in greater detail in the Report and is incorporated by reference herein.

[2] On September 17, 2020, this Court adopted Magistrate Judge Lehrburger's Report and Recommendation dated August 18, 2020, (ECF No. 97), and granted Alliance's motion for summary judgment, dismissing Microbot's claims against it. *Microbot Med., Inc. v. All. Inv. Mgmt. Ltd.*, No. 19 Civ. 3782 (GBD)(RWL), 2020 WL 5600852, at *4 (S.D.N.Y. Sept. 17, 2020).

"extremely cheap," and (5) Jeremy Roe and Tony Altavilla, investor relations consultants, made various misrepresentation regarding Microbot. (Counterclaim ¶¶ 45, 47, 53, 55, 59,62, 66, 67, 72.)

## II.   LEGAL STANDARD

### A.  Reports and Recommendations.

"Although a magistrate may hear dispositive pretrial motions, he may only submit proposed findings of fact and recommendations for disposition of the matter." *Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522, 525 (2d Cir. 1990). The district court must review *de novo* the portions of a magistrate judge's report and recommendation to which a party properly objects. 28 U.S.C. § 636(b)(1)(C). However, the district court need not conduct a *de novo* hearing on the matter. *See United States v. Raddatz*, 447 U.S. 667, 675–76 (1980). Instead, it is sufficient that the district court "arrive at its own, independent conclusion" regarding those portions of the report to which objections are made. *Nelson v. Smith*, 618 F. Supp. 1186, 1189–90 (S.D.N.Y. 1985) (citation omitted).

Portions of a magistrate judge's report to which no or "merely perfunctory" objections are made are reviewed for clear error. *See Edwards v. Fischer*, 414 F. Supp. 2d 342, 346–47 (S.D.N.Y. 2006) (citations omitted). The clear error standard also applies if a party's "objections are improper—because they are 'conclusory,' 'general,' or 'simply rehash or reiterate the original briefs to the magistrate judge.'" *Stone v. Comm'r of Soc. Sec.*, No. 17 Civ. 569 (RJS), 2018 WL 1581993, at *3 (S.D.N.Y. Mar. 27, 2018) (citation omitted). Clear error is present when "upon review of the entire record, [the court is] 'left with the definite and firm conviction that a mistake has been committed.'" *United States v. Snow*, 462 F.3d 55, 72 (2d Cir. 2006) (citation omitted). "A magistrate's ruling is contrary to law if it 'fail[s] to apply or misapplies

relevant statutes, case law, or rules of procedure[.]'" *Thai Lao Lignite (Thai.) Co. v. Gov't of Lao People's Democratic Republic*, 924 F. Supp. 2d 508, 512 (S.D.N.Y. 2013) (first alteration in original) (citation omitted).

## B. Motion for Judgment on the Pleadings.

Rule 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). In deciding a motion for judgment on the pleadings, a district court must "employ the same standard applicable to Rule 12(b)(6) motions to dismiss, accepting all factual allegations in the [nonmoving party's pleading] as true and drawing all reasonable inferences in the nonmoving party's favor." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 78 (2d Cir. 2015) (internal quotation marks omitted). Therefore, to survive a motion pursuant to Rule 12(c), a complaint or counterclaim must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Hoyden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010). Under Rule 12(c), a party is entitled to judgment on the pleadings "only if it has established that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." *Juster Assocs. v. City of Rutland*, 901 F.2d 266, 269 (2d Cir. 1990) (internal quotation marks omitted).

On a Rule 12(c) motion, "the court considers the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case." *L-7 Designs, Inc. v. Old Navy LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (internal quotation marks omitted). The complaint is "deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents

that, although not incorporated by reference, are integral to the complaint." *Id.* (internal quotation marks omitted).

## C. Motion to Dismiss for Failure to State a Claim.

"A Rule 12(b)(6) motion challenges the legal sufficiency of the claims asserted in a complaint." *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 131 F. Supp. 3d 103, 119 (S.D.N.Y. 2015), *aff'd*, 843 F.3d 561 (2d Cir. 2016). In deciding a Rule 12(b)(6) motion, a court "accept[s] all factual allegations in the complaint as true, and draw[s] all reasonable inferences in the plaintiff's favor." *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009) (quoting *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008)). A court is "not, however, 'bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions.'" *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (quoting *Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir. 2008)). In order to survive such a motion, a complaint or counterclaim must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A court may "consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, legally required public disclosure documents filed with the SEC, and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit." *Kleinman v. Elan Corp., plc*, 706 F.3d 145, 152 (2d Cir. 2013) (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir.2007)).

5

## III.   PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS IS GRANTED

### A. Section 16(b) Liability.

A claim for disgorgement of profits under Section 16(b) requires Plaintiff to prove that there was (1) a purchase (2) and a sale of securities (3) by a statutory insider[3] (4) within a six-month period. *See Feder v. Frost*, 220 F.3d 29, 32 (2d Cir. 2000) (quoting *Gwozdzinsky*, 156 F.3d at 308). As Magistrate Judge Lehrburger appropriately notes, the parties do not dispute that Plaintiff has satisfied the requirements for a Section 16(b) claim. (Report at 12.) Defendant Mona, during the relevant time period, was a statutory insider as a beneficial owner of more than ten percent of Microbot stock and he purchased and sold Microbot stock within a six-month period. (*Id.* (citing Compl. ¶¶ 13–15; Counterclaim ¶¶ 3, 5; Exhibit A, ECF No. 82-1).)

Mona contends that Magistrate Judge Lehrburger erred when he determined that the unorthodox transaction exception to Section 16(b) liability does not apply to Defendant's transactions. (Def. Obj., at 5–14.) Defendant argues that his cash-for-stock transactions are unorthodox because "they are based on fraudulent statements." (Def.'s Obj., at 5.) Since Defendant's objection merely rehashes arguments raised in his original brief, this Court reviews Magistrate Judge Lehrburger's findings for clear error and finds none.

In *Kern*, the Court created the unorthodox transaction exception to Section 16(b) liability in order to encompass those transactions that are "not ordinarily deemed a sale or purchase" or are "unorthodox" or "borderline." *Kern Cty. Land Co. v. Occidental Petroleum Corp.*, 411 U.S. 582, 593–94 (1973). The Court explained that the term "has been applied to stock conversions, exchanges pursuant to mergers and other corporate reorganizations, stock reclassifications, and

---

[3] Statutory insiders are the "issuer's directors and officers and any persons who own more than ten percent of any class of the issuer's non-exempt, registered equity securities." *See Gwozdzinsky v. Zell/Chilmark Fund, L.P.*, 156 F.3d 305, 308 n.3 (2d Cir. 1998) (citing 15 U.S.C. § 78p).

6

dealings in options, rights, and warrants." *Id.* at 593 n.24. While these are examples, as Defendant notes, they serve as guidance for determining what transactions are "unorthodox." The *Kern* Court made clear that "traditional cash-for-stock transactions . . . are clearly within the purview of § 16(b)." *Id.* at 593–95. Accordingly, Defendant's transactions are clearly within Section 16(b)'s purview and are not within the ambit of the exception. (Report at 14.)

Nevertheless, Mona asks this Court to bypass the traditional nature of his transactions and instead "inquire considering all relevant facts whether [the] given transaction[s] could possibly tend to accomplish the practices Section 16(b) was designed to prevent.'" (Def.'s Obj., at 6 (citing *Blau v. Lamb*, 363 F.2d 507, 515 (2d Cir. 1966).) He appears to rely on the fact that the Second Circuit did not "'us[e] the word 'unorthodox'" but proceeded to inquire into the transaction at issue there. *Id.* Defendant, however, misinterprets *Blau*. While he accurately quotes the opinion, it is easy to quote language in a vacuum, and argue that it supports a particular proposition. Defendant must, however, understand *Blau's* language in the context in which it presents itself in the opinion. Even though the Court did not state the term "unorthodox," it analyzed an unorthodox transaction, namely a stock conversion.[4] *Blau*, 363 F.2d at 516–20. Since the stock conversion did not fit squarely within the definition of "purchase" or "sale" under Section 16(b), the Second Circuit proceeded to analyze the transaction further. *Id.* This approach aligns with the approach taken by *Kern*. It is not until a court determines that a transaction is unorthodox, that it then proceeds to analyze whether the

---

[4] A transaction that the *Kern* Court lists as an example of "unorthodox" transactions. *Kern*, 411 U.S. at 595 n.24.

transaction accomplishes "the practices Section 16(b) was designed to prevent."[5] *See Kern*, 411 U.S. at 595. Consequently, this Court declines to analyze Mona's transactions further.

It is important to understand that the *Kern* Court created the exception because "[t]he statutory definitions of 'purchase' and 'sale' are broad and, . . . reach many transactions not ordinarily deemed a sale or purchase." *Kern*, 411 U.S. at 593–94. Thus, "[w]here alternative constructions of the terms ["purchase" or "sale"] are possible, those terms are to be given the construction that best serves the congressional purpose of curbing short-swing speculation by corporate insiders." *Kern*, 411 U.S. at 595. This case does not present such a circumstance because the traditional transactions at issue here are "ordinarily deemed a sale or purchase."[6] Consequently, "Section 16(b) operates mechanically, and makes no moral distinctions, penalizing technical violators of pure heart, and bypassing corrupt insiders who skirt the letter of the prohibition." *Magma Power Co. v. Dow Chem. Co.*, 136 F.3d 316, 320–21 (2d Cir. 1998). Indeed, Section 16(b) was formed as a "blunt instrument" to impose a form of strict liability by necessitating no showing of actual misuse of inside information or unlawful intent. *Donoghue v. Bulldog Inv'rs Gen. P'ship*, 696 F.3d 170, 174 (2d Cir. 2012) (citations omitted). Accordingly, Defendant Mona is subject to disgorgement of short-swing profits under Section 16(b).

## B. Defendant's Affirmative Defenses.

Magistrate Judge Lehrburger correctly determined that a defense of unclean hands is not a defense applicable to Section 16(b). (Report at 18.) In fact, as the Report outlines, courts have

---

[5] Indeed, the *Blau* Court applied Section 16(b) to the traditional transactions in that case without further analysis. For example, defendant's purchase and sale of the company's stock on the American Stock Exchange were subject to Section 16(b). *Blau*, 363 F.2d at 527.

[6] Mona's reliance on *Portnoy* is similarly misplaced. (Def.'s Obj., at 6–7.) As Magistrate Judge Lehrburger accurately explains, that case "involved an unorthodox transaction . . . 'instead of a traditional cash-for-stock transaction'." (Report at 15 (quoting *Portnoy v. Seligman & Latz, Inc.*, 516 F. Sup. 1188, 1195 (S.D.N.Y. 1981).) The *Portnoy* court made clear that "no case either before or after [*Kern*] has exempted cash-for-stock transactions from the automatic application of section 16(b). . . ." *Id.* at 1197.

8

routinely declined to apply equitable defenses to Section 16(b) claims. (*Id.* (collecting cases).) Accordingly, this Court rejects the affirmative defense.[7]

Likewise, Magistrate Judge Lehrburger accurately determined that Defendant's Section 28(a) windfall argument fails. (*Id.* at 22.) As the Report outlines, Sections 28(a) and 16(b) serve different purposes and provide distinct remedies. (*Id.*) While Section 16(b) serves as "a strict prophylactic rule," Section 28(a) is intended to compensate "civil plaintiffs for economic loss." (*Id.* at 20 (quoting *Osofsky v. Zipf*, 645 F.2d 107, 111 (2d Cir. 1981); *Foremost-McKesson, Inc. v. Provident Securities Co.*, 423 U.S. 232, 251 (1976)).) Moreover, Section 16(b)'s disgorgement of profit is distinct from Section 28(a)'s compensatory damages. (*Id.* (collecting cases).) Consequently, this Court rejects Defendant's windfall defense.

## C. Calculation of Damages.

Magistrate Judge Lehrburger calculated Defendant Mona's short swing profits in the amount of $484,614.30. (Report at 23.) Mona does not object to the method of computation. He only objects to Magistrate Judge Lehrburger's finding that the operative date for Section 16(b)'s purposes is the date of execution, not the date of settlement. (Def. Obj., at 15–18.) Since Defendant's objection rehashes arguments from his original brief, this Court reviews for clear error.

Magistrate Judge Lehrburger did not err when he calculated the swing-profits using the execution date, as opposed to the settlement date, of the transactions. "'[T]he operative date for Section 16(b) purposes is the date of execution, not settlement.'" *Chechele v. Dundon*, No. 19 Civ. 10544 (GBD), 2020 WL 4748298, at *4 (S.D.N.Y. Aug. 17, 2020) (quoting *Donoghue v. Patterson Companies, Inc.*, 990 F. Supp. 2d 421, 426 (S.D.N.Y. 2013)). It is the "point at which

---

[7] Magistrate Judge Lehrburger correctly notes that, even though the affirmative defense of unclean hands is unavailable in Section 16(b) suits, investors claiming fraud are not left without remedy and may assert such a claim separately. (Report at 19 n.10.)

the investor becomes irrevocably committed to the transaction and, in addition, no longer has control over the transaction in any way that could be turned to speculative advantage by the investor." *Rubenstein v. vTv Therapeutics, Inc.*, No. 15 Civ. 9752 (VSB), 2017 WL 1194688, at *3 (S.D.N.Y. Mar. 30, 2017) (citation omitted).    Defendant argues that these cases are distinguishable because they involve fixed-price call options.    That is a distinction without a difference for Section 16(b) purposes. *Cf. Segen ex rel. KFx Inc. v. Westcliff Cap. Mgmt., LLC*, 299 F. Supp. 2d 262, 268 (S.D.N.Y. 2004) ("[J]ust as an insider's opportunity to profit commences when he purchases or sells the issuer's common stock, so too the opportunity to profit commences when the insider engages in transactions in options or other derivative securities that provide an opportunity to obtain or dispose of the stock at a fixed price."). Accordingly, the date of execution is the operative date and Magistrate Judge Lehrburger's short-swing calculations are correct.

As Magistrate Judge Lehrburger properly concluded, no material issue of fact remains to be resolved.  (Report at 25.)  Thus, Plaintiff is entitled to judgment as a matter of law as to its Section 16(b) claim and judgment in the amount of $484,614.30 against Defendant.[8]

---

[8] Magistrate Judge Lehrburger appropriately acknowledges Section 16(b)'s "'harsh,' and 'Draconian' strict liability regime" but the question of whether the outcome here is "wise and just" is best left to the Legislative Branch.  (Report at 25 n. 13 (quoting *Rosen v. Price*, No. 95 Civ. 5089 (CSH), 1997 WL 401793, at *4 (S.D.N.Y. July 16, 1997)).)  Defendant urges this Court to "address the unjust outcome" because there is "a split between the Congress and the Senate which has resulted in, for at least two years, an almost complete and total breakdown of the system in which laws have been amended and or passed." (Def.'s Obj., at 2 n.1.)  Defendant, however, fails to cite support for this assertion. Indeed, the 116th Congress enacted 344 laws, which disproves Defendant's assertion. *See* Library of Congress – 116th Congress (2019-2020), https://www.congress.gov/browse/116th-congress (last accessed on March 29, 2021); *see also L-7 Designs, Inc. v. Old Navy LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (On a Rule 12(c) motion, "the court considers . . . any matter of which the court can take judicial notice for the factual background of the case.") (internal quotation marks omitted).

## IV.    PLAINTIFF'S MOTION TO DISMISS IS GRANTED

Magistrate Judge Lehrburger recommends that this Court grant Plaintiff's motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim under Section 10(b) and Rule 10b-5. (Report at 49.) He also recommends that this Court permit Defendant an opportunity to attempt to replead his Section 10(b) and Rule 10b-5 claim solely with regard to the following alleged misrepresentations: (1) Consultant Roe's statements that "the shares were going to get to $10" and that he "purchased 10,000 shares" in Microbot, and (2) Consultant Altavilla's statement that Gadot was "out in Minneapolis on business, meeting with two Fortune 500 companies," and that Altavilla expected Microbot "to sign an SCS partnership any day." Defendant does not object. This Court reviews for clear error.

To state a claim under Section 10(b) and Rule 10b-5, a plaintiff must allege "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *GAMCO Inv'rs, Inc. v. Vivendi Universal, S.A.*, 838 F.3d 214, 217 (2d Cir. 2016) (quoting *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 267 (2014)).

### A. Statements Regarding Sufficiency of Capital.

As Magistrate Judge Lehrburger properly concluded, the statements regarding Microbot's sufficiency of capital are forward looking statements as defined by the Private Securities Litigation Reform Act of 1995 ("PSLRA") and are protected by the PSLRA's safe harbor provisions. (Report at 29.)   The safe harbor provides that "a defendant is not liable if [1] the forward-looking statement is identified and accompanied by meaningful cautionary language or [2] is immaterial or [3] the plaintiff fails to prove that it was made with actual knowledge that it

was false or misleading." *Slayton v. Am. Express Co.*, 604 F.3d 758, 766 (2d Cir. 2010) (citation omitted); *see also* 15 U.S.C. § 78u-5(c).

First, Magistrate Judge Lehrburger correctly determined that Microbot and Gadot's statements were sufficiently identified as forward-looking statements. (Report at 30–32.) Each statement contained in Microbot's filings are preceded by a section titled "Forward Looking Statements," which includes a description of such statements. (Report at 30–31 (citing Exhibit B, ECF No. 82-2, at 5; Exhibit D, ECF No. 82-4, at 10–11; Exhibit G, ECF No. 82-7, at 9, 11).) Moreover, at the start of the investor call, in which Gadot made an oral forward-looking statement, listeners were alerted that forward-looking statements would follow and referred to Microbot's SEC filings for cautionary language. (*Id.* at 32 (quoting Tr. dated August 14, 2017, ECF No. 103-1, at 1–2).)

Second, Magistrate Judge Lehrburger correctly concluded that the extensive and detailed cautionary language accompanying the statements at issue explicitly warned Mona regarding Microbot's potential dilution of its shares to raise additional capital and Microbot's specific liquidity risks. (Report at 33; *see also* Exhibit B, at 5–6; Exhibit D, at 10–13; Exhibit G, at 10–11.) Consequently, a reasonable investor could not have believed that these risks did not exist. (Report at 33.) Accordingly, the PSLRA's safe harbor provisions protect those Microbot and Gadot statements.

**B. Statement Regarding Microbot's Five-Year Head Start.**

Magistrate Judge Lehrburger properly determined that Mona's claims regarding Gadot's statement that Microbot had a five-year head start on its competitors are time barred. (Report at 43.) As the Report states, on November 15, 2017 and November 16, 2017, press releases announced that a Microbot competitor secured FDA approval for a competing product.[9] (*Id.* at 41 (citing Exhibit E, ECF No. 82-5).) A reasonably diligent investor, investigating Gadot's statement, would have discovered the press releases and the facts needed to plead the elements of a Section 10(b) and Rule 10b-5 claim. (Report at 43.) Consequently, Mona's claims are time barred because he filed his suit on February 4, 2020, months after the expiration of the two-year statute of limitations on November 15 or November 16, 2019.[10]

**C. The "Extremely Cheap" Statement.**

As Magistrate Judge Lehrburger accurately concluded, Gadot's statement that Microbot's shares are "extremely cheap" is a statement of opinion. (Report at 44.) Moreover, the Report appropriately outlines the pleading requirements to establish liability for statements of opinion and that Defendant's conclusory allegations fail to meet such requirements. (*Id.* (citing ¶¶ 62, 64).) Consequently, Gadot's opinion is not actionable. (*Id.* at 45.)

**D. The Statements of the Investor Relations Consultants.**

Magistrate Judge Lehrburger correctly concluded that Mona failed to state a claim regarding the statements made by the investor relations consultants. (*Id.* at 45–49.) First, Roe's statement that Microbot's shares were "lightning in a bottle" is mere puffery and too general for

---

[9] This Court may take judicial notice of news reports "'for purposes of evaluating timeliness arguments,' . . . without regard to the truth of their contents.'" (Report at 41 n.17 (quoting *DoubleLine Capital LP v. Odebrecht Finance, Ltd.*, 323 F. Supp. 3d 393, 436 (S.D.N.Y. 2018)).)

[10] This Court need not address whether this statement is puffery since the claims regarding this statement are time barred.

a reasonable investor to have been misled. (*Id.* at 46 (quoting *In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223, 245 (2d Cir. 2016)).) Second, Roe's statement that Microbot's "shares were going to get to $10" is insufficient to support a claim for securities fraud because it is not worded as a guarantee and Mona does not allege that Roe did not believe the statement or supported the statement with facts that Roe knew to be false. (*Id.* (quoting *Novak v. Kasaks*, 216 F.3d 300, 315 (2d Cir. 2000); *In re NTL, Inc. Secs. Litig.*, 347 F. Supp. 2d 15, 34 (S.D.N.Y. 2004)).) This forward-looking statement is also protected by the PSLRA's safe harbor provisions because Mona fails to allege actual knowledge of falsity. (*Id.* at 47.)

Third, Magistrate Judge Lehrburger appropriately concluded that Mona fails to allege that Roe's statement that he "purchased an additional 10,000 shares" of Microbot was false. (*Id.*) Finally, Mona fails to put forth specific factual allegations showing that Altavilla's statement regarding Gadot's visit to Minneapolis to meet with "two Fortune 500 companies" and his expectation that Microbot would sign an "SCS partnership" were false or that Altavilla had little reason to believe the partnership would not be signed.[11] (*Id.* at 47.)[12]

## V.   CONCLUSION

Magistrate Judge Lehrburger's Report is ADOPTED. Microbot's motion for judgment on the pleadings and motion to dismiss Defendant Mona's counterclaim, (ECF No. 81), is GRANTED.[13] Judgment is entered in favor of Microbot in the amount of $484,614.30.

---

[11] As an alternative ground for dismissal, Defendant Mona fails to allege specific facts showing his reasonable reliance on these statements made by the investor relations consultants during private calls with him. (Report at 49.)

[12] This Court declines to address Microbot's scienter arguments because Defendant's claims are dismissed for the reasons stated.

[13] Microbot's alternative request to sever Mona's counterclaim is denied as moot.

14

Defendant Mona's counterclaim against Microbot is dismissed with leave to attempt to replead his proposed Section 10(b) and Rule 10b-5 counterclaim solely with regard to the following statements: (1) Roe's statement that Microbot's "shares were going to get to $10" and that he "purchased 10,000 shares in the company"; and (2) Altavilla's statements that Gadot was "in Minneapolis on business, meeting two Fortune 500 companies," and that he expected Microbot "to sign an SCS partnership any day."

Defendant Mona may seek leave to replead by letter application, attaching a proposed amended counterclaim, on or before April 30, 2021, if such an amendment would not be futile.

Plaintiff Microbot shall file any opposition to Defendant's letter application on or before May 31, 2021.

Defendant Mona may serve any reply on or before June 14, 2021.

The Clerk of Court is directed to close the motion accordingly.


Dated: New York, New York
       March 30, 2021

                                              SO ORDERED.

                                              *George B. Daniels*

                                              GEORGE B. DANIELS
                                              United States District Judge

15