### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF NEW YORK

MICROBOT MEDICAL INC.

                Plaintiff,

v.

JOSEPH MONA,

                Defendant.

Case No.: 19-CV-3782(GBD)(RWL)

### DEFENDANT MONA'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO DISMISS FOR LACK OF SUBJECT-MATTER JURISDICTION

Defendant Joseph Mona ("Mona"), by and through his undersigned counsel, and pursuant to Rules 12(b)(1), 12(h)(3), and 60(b) of the Federal Rules of Civil Procedure, hereby submits this Memorandum of Law in Support of his Motion to Dismiss All Claims for Lack of Subject-Matter Jurisdiction. All claims asserted by Plaintiff Microbot Medical, Inc. ("Microbot") in its Second Amended Complaint filed November 18, 2019 [ECF No. 44] ("Second Am. Compl."), are predicated on alleged violations of Section 16(b) of the Securities Exchange Act, 15 U.S.C. § 78p(b). [*See* Second Am. Compl. ¶¶ 20–23; *id.* at 6]. But recent case law—applying binding precedent on Article III standing to Section 16(b) claims—makes clear that Microbot has not sufficiently pled standing for any of the claims alleged, a jurisdictional defect that can be raised at any time. Accordingly, Mona respectfully requests that the Court vacate its March 30, 2021 Memorandum Decision and Order granting judgment on the pleadings to Microbot for its claims against Mona [ECF No. 106] and enter an order dismissing the Second Amended Complaint.

### INTRODUCTION

On March 13, 2023, Magistrate Judge James M. Wicks for the Eastern District of New York found that, without a showing of concrete harm, a violation of Section 16(b) alone is

insufficient to confer Article III standing.  *Packer on behalf of 1-800 Flowers.com, Inc. v. Raging Cap. Mgmt., LLC*, No. 15-CV-05933 (JMW), 2023 WL 2484442, at *10 (E.D.N.Y. Mar. 13, 2023), *appeal docketed*, No. 23-367 (2d Cir. Mar. 15, 2023).  According to *Packer*, the Supreme Court's decision in *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021), effectively overruled the Second Circuit's prior notion in *Donoghue v. Bulldog Investors General Partnership*, 696 F.3d 170 (2d Cir. 2012) ("*Bulldog*"), *cert. denied*, 569 U.S. 994 (2013), that a violation of Section 16(b) *alone* sufficiently confers Article III standing upon the issuing corporation. *Id.*

In *Packer*, because the complaint was "bereft of any actual injury allegations" and the plaintiff "fail[ed] to point to or articulate any actual reputational harm to the [issuing corporation] flowing from [d]efendants' breach of Section 16(b)," the court found that the plaintiff did not demonstrate a concrete harm sufficient to support Article III standing and all of plaintiff's claims were dismissed.  *Packer*, 2023 WL 2484442, at *8, 10.  The same necessarily applies here.

## LEGAL STANDARD

### I.     *Article III Standing*

"It is axiomatic that federal courts are courts of limited jurisdiction and may not decide cases over which they lack subject matter jurisdiction."  *Lyndonville Sav. Bank & Tr. Co. v. Lussier*, 211 F.3d 697, 700 (2d Cir. 2000).  "Unlike failure of personal jurisdiction, failure of subject matter jurisdiction is not waivable and may be raised at any time by a party or by the court *sua sponte*." *Id.*  "If subject matter jurisdiction is lacking, *the action must be dismissed*." *Id.* at 700–01 (emphasis added); *see* Fed. R. Civ. P 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action").

Article III of the U.S. Constitution grants federal courts the "judicial power" to resolve only "Cases" or "Controversies."  U.S. Const. art. III §§ 1–2; *see Raines v. Byrd*, 521 U.S. 811, 818 (1997) ("No principle is more fundamental to the judiciary's proper role in our system of

government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." (citation omitted)).   This case-or-controversy requirement, embodied in the doctrine of standing, "confines the federal courts to a properly judicial role."   *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).   Under settled precedent, the "irreducible constitutional minimum" of standing consists of three elements: (1) the plaintiff must have suffered an injury in fact, (2) the defendant must have caused that injury, and (3) a favorable decision must be likely to redress it.   *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992).   "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'"   *Spokeo*, 578 U.S. at 339 (quoting *Lujan*, 504 U.S. at 560).   A "particularized" injury "must affect the plaintiff in a personal and individual way."   *Lujan*, 504 U.S. at 560 n.1.

With respect to statutory violations, the Supreme Court made clear in 2021 in *TransUnion* that "[o]nly plaintiffs *concretely harmed by a defendant's statutory violation* have Article III standing to seek damages against that private defendant in federal court."   141 S. Ct. at 2197 (emphasis added).

## II.   *Relief From Judgment Pursuant To Rule 60(b)*

Rule 60(b) of the Federal Rules of Civil Procedure allows a district court to "relieve a party . . . from a final judgment, order, or proceeding" for several specified reasons, including where "the judgment is void."   Fed. R. Civ. P. 60(b)(4).   "[A] void judgment is one so affected by a fundamental infirmity that the infirmity may be raised even after the judgment becomes final." *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 270 (2010).   This is understood to mean that a judgment is void pursuant to Rule 60(b)(4) if the court lacked subject-matter jurisdiction to render the judgment.   *Quiles v. Martuscello*, 2022 WL 2803354, at *1 (E.D.N.Y. July 18, 2022) (citing *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 138 (2d Cir. 2011)).

## ARGUMENT

Microbot's claims rely on the premise that, because Section 16(b) is a strict-liability statute, it "must prove only that a defendant was an insider" under Section 16(b). [Second Am. Compl. ¶ 2]. As in *Packer*, Microbot's Second Amended Complaint does not include any actual injury allegations, and at no point in these four years of litigation has Microbot articulated any harm to it flowing from Mona's alleged Section 16(b) violations.  In light of *TransUnion* and *Packer*, there can be no question that Microbot's mere statutory-violation claims lack Article III standing and therefore must be dismissed.

### A.  Historical Background

   1.  *Section 16(b) aims to curtail insider trading and its statutory framework reflects its intentionally narrow application.*

Section 16(b) "was designed to prevent an issuer's directors, officers, and principal stockholders 'from engaging in speculative transactions on the basis of information not available to others.'"  *Bulldog*, 696 F.3d at 173–74 (quoting *Huppe v. WPCS Int'l Inc.*, 670 F.3d 214, 218 (2d Cir. 2012)).  Instead of proscribing trading on insider information, it reflects Congress's determination that the "only method . . . effective to curb the evils of insider trading was a flat rule taking the profits out of a class of transactions in which the *possibility of abuse* was believed to be intolerably great."  *Id*. (emphasis added) (quoting *Reliance Elec. Co. v. Emerson Elec. Co.*, 404 U.S. 418, 422 (1972).  It considers "beneficial owners" of more than 10 percent of a corporation's shares to be statutory "insiders" who must disgorge short-swing profits obtained from buying or selling the corporation's shares within a six-month period. 15 U.S.C.§ 78p.

Section 16's statutory framework limits its application by enumerating a list of institutions excepted from its definition of "beneficial owner."  And because it "imposes a form of strict liability," courts have been "reluctant to exceed a literal, 'mechanical' application of the statutory

text in determining who may be subject to liability." *Packer v. Raging Capital Management, LLC*, 981 F.3d 148, 154 (2d Cir. 2020) (citing *Olagues v. Perceptive Advisors LLC*, 902 F.3d 121, 126 (2d Cir. 2018)).  Thus, Section 16(b) is applied narrowly with the understanding that its "strict liability remedy should be employed cautiously to avoid unfair application."  *Id*. (citing *Foremost-McKesson, Inc. v. Provident Sec. Co.*, 423 U.S. 232, 251 (1976)).

Unlike most federal securities laws, Section 16(b) does not confer enforcement authority on the Securities and Exchange Commission, but rather authorizes the issuer of the securities to sue for relief in a private action.  *Bulldog*, 696 F.3d at 174 (citing *Gollust v. Mendell*, 501 U.S. 115, 122 (1991); 15 U.S.C. § 78p(b)).

> 2. *The Supreme Court's 2021 decision in* TransUnion *made clear that claims of a statutory violation alone are insufficient to support Article III standing absent a showing of concrete harm.*

In 2012, the Second Circuit concluded: "short-swing trading in an issuer's stock by a 10% beneficial owner in violation of Section 16(b) of the Securities Exchange Act *causes injury* to the issuer sufficient for constitutional standing."  *Bulldog*, 696 F.3d at 180 (emphasis added).  Four years later, in *Spokeo*, the Supreme Court made clear: "Article III standing requires a concrete injury even in the context of a statutory violation."  578 U.S. at 341.

Then, in 2021, the Supreme Court in *TransUnion* emphasized: "No concrete harm, no standing."  141 S. Ct. at 2200, 2214.  But beyond those five words, *TransUnion* altered the landscape for analysis of statutory violation claims, unequivocally holding: "Congress's creation of a statutory prohibition or obligation and a cause of action does not relieve courts of their responsibility to independently decide whether a plaintiff has suffered a concrete harm under Article III . . . ." *Id*. at 2205.  The Court elaborated:

> For standing purposes, therefore, an important difference exists between (i) a plaintiff 's statutory cause of action to sue a defendant over the defendant's violation of federal law, and (ii) a plaintiff's suffering concrete harm because of the

> defendant's violation of federal law.  Congress may enact legal prohibitions and
> obligations.   And Congress may create causes of action for plaintiffs to sue
> defendants who violate those legal prohibitions or obligations.  But under Article
> III, an injury in law is not an injury in fact.  Only those plaintiffs who have been
> *concretely harmed* by a defendant's statutory violation may sue that private
> defendant over that violation in federal court.

*Id*.  This "concrete-harm requirement," *TransUnion* recognized, "is essential to the Constitution's

separation of powers."  141 S. Ct. at 2207.

The Second Circuit has since recognized the impact of *TransUnion*.  In *Maddox v. Bank of*

*New York Mellon Trust Co., N.A.*, No. 19-1774, 2021 WL 1846308 (2d Cir. May 10, 2021), the

panel concluded that a violation of New York statutory law was sufficient for Article III standing.

But then after the decision in *TransUnion* and a request for rehearing, the panel in *Maddox*

withdrew it prior opinion and concluded that "*TransUnion* established that in suits for damages

plaintiffs cannot establish Article III standing by relying entirely on a statutory violation or risk of

future harm" and found that the plaintiffs there had not suffered the requisite "concrete" harm for

Article III, meaning their statutory violation claims should be dismissed.  *Maddox v. Bank of New*

*York Mellon Tr. Co., N.A.*, 19 F.4th 58, 64 (2d Cir. 2021).

Similarly, in *Harty*, the Second Circuit recognized: "Last Term, the Supreme Court

clarified that a plaintiff has standing to bring a claim for monetary damages following a statutory

violation only when he can show a current or past harm beyond the statutory violation itself."

*Harty v. W. Point Realty, Inc.*, 28 F.4th 435, 443 (2d Cir. 2022).  The court of appeals found that,

because the plaintiff's Americans with Disability Act ("ADA") claims were based on his attempted

access to West Point Realty's website as a "tester" of ADA compliance rather than as an actual

prospective traveler, he did not suffer concrete harm and therefore "lack[ed] standing to bring a

suit for damages."  *Id*.

In the past two years, both the Supreme Court and the Second Circuit have repeatedly made clear: "a statutory violation alone, however labeled by Congress, is not sufficient for Article III standing." *Id*. at 444 (citing *TransUnion*, 141 S. Ct. at 2205).  And district courts within the Second Circuit have followed course, dismissing numerous statutory-violation claims absent a showing of concrete harm. *See, e.g.*, *Mumin v. Miller & Milone, P.C.*, No. 21 CIV. 1553 (GBD), 2022 WL 16857108, at *3 (S.D.N.Y. Nov. 10, 2022) (dismissing FDCPA claims and acknowledging: "District courts following *TransUnion* and *Maddox* have uniformly held that, absent specific evidence of reputational or monetary harm in FDCPA and FCRA cases, plaintiffs lack constitutional standing" (citations omitted)); *Benhayun v. Halsted Fin. Servs., LLC*, No. 21CV4421WFKSIL, 2022 WL 4813538, at *1 (E.D.N.Y. Sept. 30, 2022) (claims brought under the Fair Debt Collections Practices Act ("FDCPA") premised on alleged calculation error in debt collection letter lacked Article III standing and dismissed for lack of subject-matter jurisdiction); *Metcalf v. TransPerfect Translations Int'l, Inc.*, No. 19 CIV. 10104 (ER), 2022 WL 4661926, at *17 (S.D.N.Y. Sept. 30, 2022) (plaintiffs failed to sufficiently allege an injury in fact sufficient to establish standing to assert claims for wage statement violations under New York Labor Law).

**B.  The Eastern District of New York recently specifically found in *Packer* that *TransUnion* effectively overruled the Second Circuit's decision in *Bulldog*—meaning an alleged Section 16(b) violation alone is insufficient to support Article III standing absent a showing of "concrete harm."**

As a matter of first impression, Judge Wicks in *Packer* addressed "whether a plaintiff, in a derivative action brought under Section 16(b), in light of the pronouncement in *TransUnion*, has Article III standing to bring and maintain the action."  2023 WL 2484442, at *1.  There, the parties disputed whether the plaintiff had "suffered an injury in fact to support Article III standing in the wake of *TransUnion*," and the court determined that it necessarily had to address "whether *TransUnion* casts doubt on the continued validity of *Bulldog*."  *Id*.

Ultimately, the *Packer* court concluded that *Bulldog*'s notion "that a violation of Section 16(b) *alone* sufficiently confers Article III standing upon the issuing corporation or derivative shareholder without more, *cannot co-exist with TransUnion*'s pronouncement that a statutory violation and a cause of action alone are insufficient to support Article III standing without a showing of concrete harm to the plaintiff."  *Id*. at *10 (second emphasis added).  Simply put, "*Bulldog* cannot be squared with *TransUnion* and *TransUnion* controls."  *Id*.

And with respect to the requisite concrete harm that a plaintiff must establish following *TransUnion*, Judge Wicks simply found that Packer had not made that showing "beyond the alleged statutory violation."  *Id*.  Thus, the case was dismissed for lack of standing.  *Id*.

**C. Here, where no concrete harm is alleged, Microbot's Second Amended Complaint must be dismissed for lack of standing.**

The "bedrock of the concrete injury inquiry is whether the alleged injury has a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts."  *See Packer*, 2023 WL 2484442 at *4 (quoting *TransUnion*, 141 S. Ct. at 2204) (quotations omitted).  And "in a suit for damages, the mere risk of future harm, standing alone, cannot qualify as a concrete harm—at least unless the exposure to the risk of future harm itself becomes a separate concrete harm."  *TransUnion*, 141 S. Ct. at 2211.  The Southern District of New York has elaborated: "to state a viable claim for statutory violations, the complaint must provide factually specific, non-conclusory allegations that they suffered a concrete harm as a result of the violations."  *Metcalf v. TransPerfect Translations Int'l, Inc.*, No. 19 CIV. 10104 (ER), 2022 WL 4661926, at *16 (S.D.N.Y. Sept. 30, 2022) (District Judge Edgardo Ramos, adopting the report and recommendation of Katharine H. Parker, United States Magistrate Judge).

Here, as in *Packer*, Microbot's six-page Second Amended Complaint is "bereft of any actual injury allegations."  2023 WL 2484442 at *8.  Instead, Microbot simply relies on its

understanding that "Section 16(b) is a strict liability statute," requiring a plaintiff only to prove "that a defendant was an insider."  [Second Am. Compl. ¶ 2].  These conclusory allegations do nothing to allege a concrete harm.  And at no point in these now four years of litigation has Microbot articulated any harm (nor even risk of future harm) to itself flowing from Mona's alleged Section 16(b) violations.

In the absence of *any* allegations of concrete or particularized harm, Microbot's Section 16(b) claims—attempting to rely on the alleged statutory violations *alone*—lack Article III standing and must be dismissed.  More specifically, because the Court lacks subject-matter jurisdiction over Microbot's claims against Mona, the Court's prior March 30, 2021 Memorandum Decision and Order granting judgment on the pleadings to Microbot for its claims against Mona [ECF No. 106] should be vacated, and the Court should enter an order dismissing the Second Amended Complaint

## **CONCLUSION**

For the reasons set forth herein, Mona respectfully requests the Court dismiss the action for lack of subject-matter jurisdiction.

Respectfully submitted,

New York, New York
Dated:    April 12, 2023

  */s/ Adam C. Ford*
Adam C. Ford
Anjula Prasad
FORD O'BRIEN LANDY LLP
275 Madison Avenue, 24th Floor
New York, NY 10016
Tel: (212) 858-0040 (main)
aford@fordobrien.com
aprasad@fordobrien.com

*Attorneys for Defendant Joseph Mona*