UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------ x

MICROBOT MEDICAL, INC.,
                              Plaintiff,

          -against-

JOSEPH MONA,
                              Defendant.

------------------------------------ x

MEMORANDUM DECISION
AND ORDER

19 Civ. 3782 (GBD) (RWL)

GEORGE B. DANIELS, United States District Judge:

Plaintiff Microbot Medical, Inc. ("Microbot" or "Plaintiff") brought this action against
Defendant Joseph Mona ("Mona" or "Defendant"), alleging that Mona violated Section 16(b) of
the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b), by buying and selling
Microbot stock within a six-month period while owning more than 10% of Microbot's stock.
(Second Am. Compl. ("SAC"), ECF No. 44, ¶¶ 1–3.)  Mona counterclaimed, alleging that
Microbot made material misrepresentations or omissions on which Mona relied in purchasing
Microbot's stock, in violation of Section 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j(b),
and Rule 10b-5, promulgated thereunder and codified at 17 C.F.R. § 240.10b–5.  (Def.'s Am.
Counterclaim, ECF No. 128.)   Microbot then moved for summary judgment as to Mona's
counterclaim. (Pl.'s Mot., ECF No. 209; Pl.'s Mem., ECF No. 210.)

Before this Court is Magistrate Judge Robert Lehrburger's Report and Recommendation
("Report"), recommending that this Court grant Microbot's motion for summary judgment and
dismiss Mona's counterclaim with prejudice. (*See* R. & R., ("Report"), ECF No. 231.)  Having
reviewed the Report and all objections, this Court ADOPTS the Report in full.  Microbot's motion
for summary judgment is GRANTED and Mona's counterclaim is dismissed with prejudice.

## I.  FACTUAL AND PROCEDURAL BACKGROUND[1]

Microbot creates and commercializes medical technologies. (Report at 4.) On May 31, 2017, Microbot announced that it had received a patent for its Self-Cleaning Shunt product. (*Id.*) The same month, Microbot hired Integra Consulting LLC ("Integra") for public relations and communications assistance. (*Id.*) Jeremy Roe ("Roe") and Tony Altavilla ("Altavilla") worked for Integra and consulted for Microbot. (*Id.* at 5.)

Mona, a day-trader, began trading Microbot stock on December 6, 2016. (*Id.* at 5–6.) By August 2017, Mona had accumulated over 395,000 shares of Microbot stock and had engaged in hundreds of buy and sell transactions. (*Id.* at 6–7.)

Mona alleges that Roe and Altavilla made misstatements about Microbot during three telephone conversations on August 7, 2017, October 2, 2017, and October 10, 2017. (*Id.* at 7–8.)

On August 7, 2017, Roe told Mona that "the shares are going to get to $10." (*Id.* at 6.) During the ensuing week, Mona bought 130,729 additional shares of Microbot stock. (*Id.*) Then, beginning on August 15, 2017 until October 2, 2017, Mona sold and bought hundreds of thousands of Microbot shares. (*Id.* at 7.)

On October 2, 2017, Altavilla told Mona that Microbot CEO Harel Gadot was "out in Minneapolis on business, meeting with two Fortune 500 companies." (*Id.*) In the three days after this conversation with Altavilla, Mona engaged in 57 separate sales of Microbot stock, selling 323,000 shares. (*Id.*) Over the eight days between Mona's first and second call with Altavilla, Mona reduced his Microbot holdings by over 30 percent. (*See id.*)

---

[1] This Court assumes familiarity with the background set forth in the Report and recounts here only those facts necessary for resolution of the issues before it. The relevant factual and procedural background is set forth in greater detail in the Report and is incorporated by reference herein.

Finally, on October 10, 2017, Altavilla told Mona that Microbot was expected "to sign a[]
[Self-Cleaning Shunt] partnership any day." (*Id.* at 8.) Later that day, Mona purchased 409 shares
of Microbot stock. (*Id.*) After October 10, 2017, Mona did not make any trades of Microbot for
over two weeks—until October 27, 2017, when he purchased 30,000 shares of Microbot across
four transactions. (*Id.* at 8.)

Microbot filed its complaint in this action on November 18, 2019, seeking to recover
"short-swing profits" pursuant to Section 16(b) of the Securities Exchange Act. (ECF No. 44, ¶¶
20–23.) Mona timely filed an answer and counterclaim against Microbot. (ECF No. 59.) In his
counterclaim, Mona alleged that Microbot violated § 10(b) of the Exchange Act, 15 U.S.C. §
78j(b), and Rule 10b-5, promulgated thereunder and codified at 17 C.F.R. § 240.10b5, by making
material misstatements through public filings and via consultants Roe and Altavilla. (*Id.* at 18.)
This Court granted Microbot's Motion for Judgment on the Pleadings on its § 16(b) claim,
awarding Microbot $484,614.30. (ECF No. 106, at 14–15.) As part of this Court's decision,
Microbot's motion to dismiss Mona's counterclaim was granted with leave for Mona to replead
with respect to the three statements made by Roe and Altavilla on August 7, 2017, October 2,
2017, and October 10, 2017. (*Id.* at 15.) Mona subsequently filed his amended counterclaim on
June 23, 2021. Following the close of discovery, Microbot filed a motion for summary judgment
to dismiss Mona's counterclaims. (Pl.'s Mot.; *see also* ECF No. 199.) Mona timely filed his
opposition to Microbot's motion. (Def.'s Opp., ECF No. 216.)

On August 4, 2023, Magistrate Judge Lehrburger filed his Report on Microbot's motion
for summary judgment. (Report.) Magistrate Judge Lehrburger advised the parties that failure to
file timely objections to the Report would constitute a waiver of those objections on appeal. (*Id.*
at 40.) Microbot filed untimely and perfunctory objections to the Report, noting that it was

3

objecting to preserve its ability to appeal this Court's decision if the Report was not adopted. (*See* Pl.'s Objs., ECF No. 232.)

## II.   LEGAL STANDARD

### A. Reports and Recommendations

A court "may accept, reject, or modify, in whole or in part, the findings or recommendations" set forth in a magistrate judge's report. 28 U.S.C. § 636(b)(1)(C). The court must review *de novo* the portions of a magistrate judge's report to which a party properly objects. *Id.* Portions of a magistrate judge's report to which no or "merely perfunctory" objections are made are reviewed for clear error. *Edwards v. Fischer*, 414 F. Supp. 2d 342, 346–47 (S.D.N.Y. 2006) (citation omitted). The clear error standard also applies if a party's "objections are improper—because they are 'conclusory,' 'general,' or 'simply rehash or reiterate the original briefs to the magistrate judge.'" *Stone v. Comm'r of Soc. Sec.*, No. 17 Civ. 569, 2018 WL 1581993, at *3 (S.D.N.Y. Mar. 27, 2018) (citation omitted). Clear error is present when "upon review of the entire record, [the court is] 'left with the definite and firm conviction that a mistake has been committed.'" *United States v. Snow*, 462 F.3d 55, 72 (2d Cir. 2006) (citation omitted).

### B. Summary Judgment

Summary judgment is appropriate only when there is no "genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "'material' for the purposes of summary judgment when it 'might affect the outcome of the suit under the governing law.'" *See Barlow v. Male Geneva Police Officer*, 434 F. App'x 22, 25 (2d Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute of material fact is "'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.* (quoting *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008), *cert. denied*, 558 U.S. 933 (2009)). On a motion for summary judgment, the court must "resolve

all ambiguities and draw all reasonable inferences in the light most favorable to the party opposing the motion." *Cifarelli v. Village of Babylon*, 93 F.3d 47, 51 (2d Cir. 1996). But "mere conclusory allegations, speculation or conjecture will not avail a party resisting summary judgment." *Id.*

### C.  Section 10(b) of the Exchange Act and SEC Rule 10b-5

Section 10(b) makes it unlawful to "use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe." 15 U.S.C. § 78j(b). To sustain a claim under Section 10(b) and Rule 10b-5, a plaintiff must prove the following elements: "(l) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *GAMCO Inv'rs, Inc. v. Vivendi Universal, S.A.*, 838 F.3d 214, 217 (2d Cir. 2016) (per curiam) (citation omitted). The third and fourth elements—collectively termed "transaction causation"—require "an allegation that but for the claimed misrepresentations or omissions, the plaintiff would not have entered into the detrimental securities transaction." *Liana Carrier Ltd. v. Pure Biofuels Corp.*, 672 F. App'x 85, 89 (2d Cir. 2016) (quoting *Lentell v. Merrill Lynch & Co., Inc.*, 396 F.3d 161, 172 (2d Cir. 2005)).

### III.   MICROBOT'S MOTION FOR SUMMARY JUDGMENT IS GRANTED

Mona's securities fraud claim centers on three alleged misstatements: (1) Roe's August 7, 2017 statement that Microbot's "shares were going to get to $10," (2) Altavilla's October 2, 2017 statement that Microbot's CEO was "out in Minneapolis on business, meeting with two Fortune 500 companies," and (3) Altavilla's October 10, 2017 statement that Altavilla expected Microbot "to sign a[] [Self-Cleaning Shunt] partnership any day." (Report at 17.)

5

Microbot's summary judgment motion focuses on reliance and loss causation.[4]   (Def.'s Mem. at 4; Report at 16.)   In his Report, Magistrate Judge Lehrburger determined that although Mona had raised a triable issue of material fact regarding Mona's reliance on two of the alleged misstatements,[5] Mona failed to raise a triable issue of fact supporting loss causation.   Because Mona has failed to raise a material issue of fact that would support a finding of loss causation, Microbot is entitled to summary judgment on Mona's counterclaim in its entirety.   *See In re Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d 501, 514 (2d Cir. 2010).

## A. Loss Causation

"Loss causation is the causal link between the alleged misconduct and the economic harm ultimately suffered by the plaintiff." *Lentell*, 396 F.3d at 172 (citation and quotation marks omitted); *Dura Pharmaceuticals*, 544 U.S. at 342; *GE Invs. v. Gen. Elec. Co.*, 447 F. App'x. 229, 231 (2d Cir. 2011). "In short, plaintiffs must show 'a sufficient connection between [the fraudulent conduct] and the losses suffered[.]" *Omnicom*, 597 F.3d at 510 (quoting *Lattanzio v. Deloitte & Touche LLP*, 476 F.3d 147, 157 (2d Cir. 2007)).   "This requirement exists because private securities fraud actions are 'available, not to provide investors with broad insurance against market losses, but to protect them against those economic losses that misrepresentations actually cause.'"

---

[4] Although Microbot's motion focuses only on reliance and loss causation, there is an additional basis for granting summary judgment to Microbot as to Roe's August 7, 2017 statement that Microbot's stock would reach $10. (Report at 16, n.12.)   As a forward-looking statement containing a projection of Microbot's future economic performance, Roe's statement is protected under the PSLRA's safe harbor provision unless Roe knew that the statement was false or misleading. 15 U.S.C. § 78u–5(C); *Slayton v. Am. Exp. Co.*, 604 F.3d 758, 766-67 (2d Cir. 2010) (citation omitted).   There is no evidence in the record indicating that Roe had actual knowledge that the statement was false or misleading.   Thus, the claim is subject to dismissal. *Slayton*, 604 F.3d at 765–66.

[5] As the Report correctly determined, a reasonable jury could find that Mona relied upon Roe's August 7, 2017 statement and Altavilla's October 10, 2017 statement, but not on Altavilla October 2, 2017 statement.   Based on Mona's purchasing activity in the days and weeks after his conversations with Roe and Altavilla on August 7, 2017 and October 10, 2017, respectively, a reasonable jury could conclude that Roe and Altavilla's statements on those dates induced Mona to purchase Microbot stock.   (Report at 17.)

*Omnicom*, 597 F.3d at 510 (quoting *Dura Pharms.*, 544 U.S. at 345).

Microbot is entitled to summary judgment on Mona's counterclaim because Mona cannot establish loss causation. The sole fact that Mona offers in support of loss causation is that he exited Microbot stock entirely on February 19, 2019, sustaining a net loss of $150,954. (Def.'s Mem. at 25; Report at 30.) This assertion, without more, fails to raise a triable issue of fact supporting loss causation. As the Report correctly concluded, Mona has offered no evidence of loss causation by which Mona's alleged economic loss can be attributed to any of Roe or Altavilla's statements.

While Mona argues that Roe and Altavilla's statements were the "direct cause" of his economic loss from trading Microbot shares, he provides no analysis or explication to support his theory.[6] (Def.'s Mem. at 24; Report at 33.) Indeed, Mona's complaint "is devoid of allegations demonstrating that such purportedly false and misleading statements were the cause of the actual loss suffered or, in other words, that any economic harm that [Mona] suffered *occurred as a result of* the alleged misrepresentations[.]" *Seagrape Investors LLC v. Tuzman*, No. 19 Civ. 9736 (RA), 2020 WL 5751232, at *16 (S.D.N.Y. Sept. 25, 2020)    (internal quotation marks and citations omitted, emphasis in original).    Mona's "mere conclusory allegations," without more, are insufficient to withstand summary judgment. *Cifarelli*, 93 F.3d at 51.

Fatal to Mona's fraud claim is that Mona *made* money when Microbot's disclosures purportedly correcting Roe and Altavilla's statements became known in Microbot's S-1 and 10-K filings in November and December 2018. (Report at 34, 36, 39); *In re Barclays Bank PLC Securities Litigation*, No. 09 Civ. 1989 (PAC), 2017 WL 4082305, at *20 (S.D.N.Y. Sept. 13, 2017) *aff'd*, 756 F. App'x. 41 (2d Cir. 2018), *as amended* (Nov. 20, 2018); *Waters v. Gen. Elec. Co.*, No. 08 Civ. 8484 (RJS), 2010 WL 3910303, at *8 (S.D.N.Y. Sept. 29, 2010) ("The Court

---

[6] As the Report notes, Mona cannot demonstrate loss causation via a theory of direct causation, materialization-of-the-risk, or corrective disclosure. (Report at 32, 33, 35.)

cannot find . . . a single section 10b-5 case in which the plaintiff prevailed on a motion to dismiss when the stock price *increased* after an announcement revealing an alleged fraud.") (emphasis in original). When the purported corrective disclosures were filed and when Mona was actively selling shares, Microbot's share price was rising. (Report at 36, 39.) Mona incurred no losses during the post-10-K filing period or the post S-1 filing period. (*Id.*) Mona made money in the immediate wake of the 10-K and S-1 filings and over the ensuing weeks by selling shares as Microbot's stock price was rising. As the Report concludes, Mona indisputably did not lose money when the disclosures purportedly correcting Altavilla and Roe's statements became known; "instead, he made money, which eliminates his fraud claim." (*Id.*)

Because Mona cannot establish a connection between Microbot's misstatements and his alleged economic loss, Microbot is entitled to summary judgment on Mona's counterclaim in its entirety.

## IV.   CONCLUSION

Magistrate Judge Lehrburger's Report is ADOPTED in full. Microbot's motion for summary judgment is GRANTED and Mona's counterclaim is dismissed with prejudice.

The Clerk of Court is directed to close the open motion at ECF No. 209 accordingly.


Dated: August 22, 2023
       New York, New York

                                          SO ORDERED.

                                          *George B Daniels*
                                          GEORGE B. DANIELS
                                          United States District Judge