UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
MICROBOT MEDICAL, INC.,

                             Plaintiff,

              -against-

JOSEPH MONA,

                            Defendant.
------------------------------------------------------------- x

MEMORANDUM DECISION
AND ORDER

19 Civ. 3782 (GBD) (RWL)

GEORGE B. DANIELS, United States District Judge:

Plaintiff Microbot Medical, Inc. ("Microbot") brought this action to recover short-swing profits against Defendant Joseph Mona ("Mona") under § 16(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78p(b), alleging that Mona profited from the purchase and sale of Microbot securities within a six-month period while owning more than 10% of the company's stock. (Second Am. Compl., ECF No. 44, ¶¶ 1–3.) On March 30, 2021, this Court granted Plaintiff's motion for judgment on the pleadings. (Order Adopting R. & R., ECF No. 106.) The next day, judgment was entered against Defendant in the amount of $484,614.30.[1] (Clerk's J., ECF No. 107.) On April 12, 2023, Defendant filed a motion to vacate the judgment and to dismiss the case based on lack of standing under Article III of the Constitution. (Mot. to Dismiss for Lack of Jurisdiction ("Defendant's Motion"), ECF No. 220.)

Before this Court is Magistrate Judge Robert W. Lehrburger's January 30, 2024 Report and Recommendation ("Report") recommending that Defendant's Motion be denied. (Report, ECF No.

---

[1] Execution on the judgment was stayed pending the resolution of a counterclaim asserted by Defendant. (*See* Order, ECF No. 152; R. & R., ECF No. 251, at 1.) This Court dismissed Defendant's counterclaim with prejudice on August 22, 2023. (Mem. Decision & Order, ECF No. 233.)

1

251.) Defendant filed timely objections to the Report, and Plaintiff filed a timely response to the Objections. (Def.'s Objs. ("Objections"), ECF No. 258; Pl.'s Resp. ("Response"), ECF No. 263.) Having reviewed the Report *de novo*, this Court OVERRULES the Objections and ADOPTS the Report in its entirety.

## I.   LEGAL STANDARDS

### A.   Reports and Recommendations of a Magistrate Judge

A reviewing court "may accept, reject, or modify, in whole or in part, the findings or recommendations" made within a magistrate judge's report. 28 U.S.C. § 636(b)(1)(C). The court must review *de novo* the portions of a magistrate judge's report to which a party properly objects. *Id.* Portions of a magistrate judge's report to which no or "merely perfunctory" objections have been made are reviewed for clear error. *Edwards v. Fischer*, 414 F. Supp. 2d 342, 346–47 (S.D.N.Y. 2006). Clear error is present when "upon review of the entire record, [the court is] left with the definite and firm conviction that a mistake has been committed." *Brown v. Cunningham*, No. 14-CV-3515 (VEC) (MHD), 2015 WL 3536615, at *4 (S.D.N.Y. June 4, 2015) (citations omitted).

### B.   Motion to Vacate for Lack of Subject Matter Jurisdiction

A district court may relieve a party from a final judgment where "the judgment is void." Fed. R. Civ. P. 60(b)(4). "[A] void judgment is one so affected by a fundamental infirmity that the infirmity may be raised even after the judgment becomes final." *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 270 (2010) (citing Restatement (Second) of Judgments § 22 (1982)). One such infirmity is the absence of subject matter jurisdiction. *See United Nat'l. Ins. Co. v. Waterfront N.Y. Realty Corp.*, 907 F. Supp. 663, 668 (S.D.N.Y. 1995); *see also Lynonville Sav. Bank & Tr. Co. v. Lussier*, 211 F. 3d 697, 700 (2d Cir. 2000) ("[F]ailure of subject matter jurisdiction is not waivable and may be raised at any time by a party or by the court *sua sponte*."). A judgment that is void under

Rule 60(b)(4) because the court lacks subject matter jurisdiction must be vacated. *United Nat'l Ins. Co.*, 907 F. Supp. at 668.

Under Article III of the Constitution, a federal court's subject matter jurisdiction is limited to resolving "Cases" or "Controversies." U.S. Const. art. III, §§ 1–2; *see Raines v. Byrd*, 521 U.S. 811, 818 (1997) (citation omitted) ("No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies."). To satisfy the "case or controversy" requirement of Article III, a plaintiff must have standing. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) ("Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy."). "Colloquially, standing means that a plaintiff has a 'personal stake' in the dispute." (Report at 3 (quoting *Raines*, 521 U.S. at 819).) In legal terms, constitutional standing has three elements: (1) the plaintiff suffered an injury in fact; (2) there is "a causal connection between the injury and the conduct complained of;" and (3) the injury likely will be redressed by judicial relief. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). The plaintiff bears the burden to prove each element. *See id.* at 562.

Defendant's Motion in the instant case argues that Plaintiff did not allege or otherwise demonstrate an "injury in fact" sufficient to support Article III standing. (*See* Mem. L. Supp. ("Def.'s Mem."), ECF No. 221, at 4.) Injury in fact is defined as "an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (citations and internal quotation marks omitted).

3

## II.     THE REPORT IS ADOPTED IN ITS ENTIRETY

### A.     The Report Accurately Characterized § 16(b) and Article III Standing Caselaw

#### i.     Article III Standing in § 16(b) Cases

§ 16(b) of the Securities Exchange Act "requires directors, officers, and beneficial owners of more than ten percent of a company's stock to disgorge their profits 'realized from the purchase and sale, or sale and purchase, of such stock occurring within a 6-month period.'" (Report at 3 (quoting *Gollust v. Mendell*, 501 U.S. 115, 117 (1991)).) The statute "authorizes the issuer – or owner of the security, if the issuer fails to act diligently – to sue for relief and receive the disgorged profits." (Report at 4 (citing 15 U.S.C. § 78p(b); *Donoghue v. Bulldog Invs. Gen. P'ship*, 696 F.3d 170, 174 (2d Cir. 2012)).) The statute's purpose is to prevent "the unfair use of information which may have been obtained by [a] beneficial owner, director, or officer by reason of his relationship to the issuer." 15 U.S.C. § 78p(b). To achieve this purpose, § 16(b) removes the profits from an entire "class of transactions in which the possibility of abuse was believed to be intolerably great." *Bulldog*, 696 F.3d at 174 (quoting *Reliance Elec. Co. v. Emerson Elec. Co.*, 404 U.S. 418, 422 (1972)). Imposing "a form of strict liability," § 16(b) applies even to those who might have violated it inadvertently. *Id.* (quoting *Credit Suisse Sec. (USA) LLC v. Simmonds*, 566 U.S. 221, 223 (2012)).

As to Article III standing in § 16(b) suits, the Second Circuit held in *Donoghue v. Bulldog Investors General Partnership* that "short-swing trading in an issuer's stock by a 10% beneficial owner . . . causes injury to the issuer sufficient for constitutional standing." 696 F.3d at 180. In affirming that the *Bulldog* plaintiff satisfied the injury-in-fact requirement, the Second Circuit explained that an issuer "has an interest in maintaining a reputation of integrity, an image of probity, for its § 16(b) insiders and in insuring the continued public acceptance and marketability of its stock." *Id.* at 177–78 (citation and internal quotation marks omitted). To protect this interest, § 16(b) confers

4

on issuers a legal right that "makes 10% beneficial owners 'constructive trustee[s] of the corporation' with a fiduciary duty not to engage in short-swing trading of the issuer's stock . . . . It is the invasion of this legal right . . . that causes an issuer injury in fact." *Id.* at 179 (quoting *Gratz v. Claughton*, 187 F.2d 46, 48 (2d Cir. 1951)). In other words, the violation of § 16(b) constitutes a breach of statutorily-imposed fiduciary duty and thereby results in a constructive trust containing the profits reaped from the violation. The issuer has a legal right to the profits contained in the constructive trust.

### ii. *TransUnion*

Defendant argues that the Supreme Court's decision in *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021), which addressed standing under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, overruled *Bulldog*. (Def.'s Mem. at 7; Report at 5.) In *TransUnion*, the Supreme Court expanded on the Article III injury-in-fact requirement for suits brought to vindicate statutory rights. 594 U.S. at 426. The Supreme Court explained that a plaintiff does not "automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right." *Id.* (quoting *Spokeo*, 578 U.S. at 341). To satisfy the injury-in-fact requirement, a plaintiff must allege a concrete harm that resulted from the defendant's violation of a statute. *Id.* at 427. That concrete harm must be a "physical, monetary, or cognizable intangible harm traditionally recognized as providing a basis for a lawsuit in American courts." *Id.* A "traditionally recognized" harm is one with "a close historical or common-law analogue," although "an exact duplicate in American history and tradition" is not required. *Id.* at 424.

Applying these principles to the claims in *TransUnion*, the Supreme Court found that plaintiffs whose credit reports had falsely identified them as potential threats to national security satisfied the injury-in-fact requirement only if the credit report had been disclosed to a third party, as required in the traditional tort of defamation. *Id.* at 432–34. In other words, these plaintiffs satisfied the injury-

5

in-fact requirement because the reputational harm they suffered when the inaccurate reports were disclosed to third parties had "a 'close relationship' to the harm associated with the tort of defamation." *Id.* at 432. As to those plaintiffs who claimed they had received information about their credits reports in two separate mailings instead of one, where the FCRA requires provision of, *inter alia*, a "complete credit file," the Supreme Court held that the plaintiffs had not alleged any harm, traditional or otherwise. *Id.* at 440. As a result, they did not have standing to bring these claims. *Id.*

### iii.  § 16(b) Cases After *TransUnion*

Several district courts have addressed Article III standing in § 16(b) cases after the Supreme Court's decision in *TransUnion*. In *Packer ex rel. 1-800-Flowers.com, Inc. v. Raging Capital Management, LLC*, 661 F. Supp. 3d 3 (E.D.N.Y. 2023), a shareholder sued a beneficial owner of more than ten percent of a company's stock for disgorgement of short-swing profits under § 16(b). (Report at 10.) The court determined that "*Bulldog* cannot be squared with *TransUnion*," *Packer*, 661 F. Supp. 3d at 17, and that a plaintiff would need to show "actual reputational harm . . . flowing from [a defendant's] breach of Section 16(b)" to establish Article III standing.[2] *Id.* at 14. In *Avalon Holdings Corp. v. Gentile*, Nos. 18-CV-7291, 18-CV-8896 (DLC), 2023 WL 4744072 (S.D.N.Y. July 25, 2023), on the other hand, that court determined that *Bulldog* "is entirely compatible with *TransUnion*." 2023 WL 4744072, at *6. The court in *Avalon* explained that "[j]ust as the Supreme Court did in *TransUnion*, the Second Circuit in *Bulldog* analyzed the harm suffered by a § 16(b) plaintiff and reasoned that it was akin to the common law injury of breach of trust arising from the 10% beneficial owner's fiduciary duty to the issuer." *Id.* Citing *Avalon*, a court in the District of Colorado reached the same conclusion.[3] *See Revive Investing LLC v. Armistice Cap. Master Fund,*

---

[2] *Packer* is currently on appeal to the Second Circuit. *See* No. 23-367 (2d Cir. March 15, 2023).

[3] Courts in two other cases in this District have also reached this conclusion, disagreeing with *Packer*. *See Safe & Green Holdings Corp. v. Shaw*, No. 23-CV-2244 (DLC), 2023 WL 5509319 (S.D.N.Y. Aug. 25,

*Ltd.*, No. 20-CV-2849 (CMA) (SKC), 2023 WL 5333768, at *7 (D. Colo. Aug. 18, 2023). The Colorado court explained:

> [T]he law of trusts analogized to in *Bulldog* is deeply rooted in the common law. Courts in this country have long held that "[i]t is a well-settled principle of equity, that wherever a trustee, or one standing in a fiduciary character, deals with the trust estate for his own personal profit, he shall account to the *cestui que trust* for all the gain which he has made." *Barney v. Saunders*, 57 U.S. 535, 543 (1853).

*Revive*, 2023 WL 5333768, at *7.

## B.  Plaintiff Has Article III Standing

Plaintiff "has standing in this case for reasons set forth in *Bulldog*, *Avalon*, and *Revive*." (Report at 12.) District courts in the Second Circuit "must follow *Bulldog* unless *TransUnion* is an intervening decision." *Avalon*, 2023 WL 4744072, at *2. If the holdings of *Bulldog* and *TransUnion* are "consistent with one another," *TransUnion* does not qualify as an intervening decision, and *Bulldog* "remains vital." *See Sec. & Exch. Comm'n v. Rio Tinto plc*, 41 F.4th 47, 53 (2d Cir. 2022). Because *Bulldog* determined that § 16(b) plaintiffs suffer concrete harm analogous to "the common law injury of breach of trust," *Avalon*, 2023 WL 4744072, at *6, *Bulldog* is compatible with *TransUnion*'s requirement that a plaintiff has suffered a harm with "a close historical or common-law analogue."[4] *TransUnion*, 594 U.S. at 424.

Defendant takes issue with the analogy to breach of trust, arguing that "[i]n contrast to corporate insiders, like officers or directors, a ten-percent beneficial [owner] under Defendant's

---

2023); *Augenbaum v. Anson Invs. Master Fund LP*, No. 22-CV-249 (AS), 2024 WL 263208 (S.D.N.Y. Jan. 24, 2024). "Every single court to address the issue of § 16(b) standing after *Packer* has disagreed with [it] . . . ." (Pl.'s Resp. at 2.)

[4] Although the plaintiff in *Bulldog* was a shareholder and not the issuer of the stock, the court made clear that the defendant was challenging whether the harm *to the issuer* was sufficient for constitutional standing and was not questioning the shareholder plaintiff's standing to sue on behalf of the issuer. *Bulldog*, 696 F.3d at 176. Nonetheless, this Court notes that Plaintiff in this case is the issuer, whereas in *Packer*, the only case in this District on which Defendant relies, the plaintiff is a shareholder and is not, himself, the issuer. *Packer*, 661 F. Supp. 3d at 7–8.

circumstance has never been considered a fiduciary." (Def.'s Objs. at 1.) "Defendant is a retail trader with no affiliation to Microbot and no 'insider' status of any kind." (*Id.* at 8.) Furthermore, according to Defendant, "there is no historical analog to imposing fiduciary-like duties on an innocent non-controlling stockholder like Defendant." (*Id.* at 9.) However, in enacting § 16(b), Congress decided to "impose[] a form of strict liability," thereby making even traders with no affiliation to a company "statutory insiders" if they surpass ten percent beneficial ownership. *See Bulldog*, 696 F.3d at 174 (quoting *Credit Suisse*, 566 U.S. at 223). Although "the wrongdoing that prompted the enactment of § 16(b)" is "trading on inside information," the "legal right that Congress created to address that wrongdoing" is "a 10% beneficial owner's fiduciary duty to the issuer not to engage in *any* short-swing trading." *Bulldog*, 696 F.3d at 177.

Moreover, as Defendant notes in his Objections, the issue here is "not whether the statutory *cause of action* is analogous to a historically recognized offense," but rather whether Plaintiff "has alleged a *harm* that is analogous to a historically recognized harm . . . ." (Def.'s Objs. at 10.) § 16(b) creates a duty required of stockholders surpassing 10% beneficial ownership and creates a clear cause of action not at issue in this case. The only question is whether the harm to Plaintiff satisfies the Article III injury-in-fact requirement. As the Report makes clear, "it is not the breach of fiduciary duty alone that equates to injury in fact . . . . There are no doubt many instances where a defendant breaches a fiduciary duty *without reaping profits* that would otherwise be subject to disgorgement pursuant to principles of equity and constructive trust." (Report at 13 (emphasis added) (citations omitted).) A party in breach of § 16(b), on the other hand, has necessarily reaped profits from short-swing trading of the issuer's stock. Depriving a § 16(b) plaintiff, in this case the issuer, of those profits causes a harm analogous to depriving the beneficiary of a constructive trust of "the profits gained from a fiduciary's breach of their duty." (*Id.*) "Far from 'transform[ing] something that is not

8

remotely harmful into something that is,'" *TransUnion*, 141 S. Ct. at 2205 (internal quotation marks omitted), § 16(b) recognizes an injury that has well-established historical roots grounded in the common law." (*Id.* at 14.) Because Plaintiff has been deprived of Defendant's profits reaped from his short-swing trading of Plaintiff's stock in violation of § 16(b), Plaintiff has suffered a concrete harm. As a result, Plaintiff has Article III standing in this case, and this Court has subject matter jurisdiction.

## III. CONCLUSION

Defendant's objections are OVERRULED. Magistrate Judge Lehrburger's Report is ADOPTED in its entirety. Defendant's motion to vacate the judgment and dismiss the case for lack of standing is DENIED.[5] The Clerk of Court is directed to close the open motion at ECF No. 220, accordingly.

Dated: March 5, 2024
      New York, New York

SO ORDERED.

*George B. Daniels*
GEORGE B. DANIELS
United States District Judge

---

[5] Defendant also proposes an alternative to vacating the judgment, asking this Court instead to stay execution of the judgment "while the parties await the Second Circuit's forthcoming decision in *Packer*." (Def.'s Objs. at 10.) To the extent that Defendant is asking this Court to grant a stay under Federal Rule of Civil Procedure 62(b) and waive the rule's bond requirement, Defendant's request is denied. *See* Fed. R. Civ. P. 62(b). When Magistrate Judge Lehrburger previously considered a request from Defendant to grant a stay, he concluded that there was no "basis to dispense with or lessen the bond required by Rule 62(b)." (Order, ECF No. 245, at 3.) Defendant has not provided any additional evidence in the Objections or elsewhere to support waiving the bond requirement, so this Court declines to do so. (*See* Def.'s Objs. at 2, 10–11.) Because Plaintiff does not object to a stay provided that Defendant posts a bond in compliance with Rule 62(b), this Court will consider an application to stay enforcement of the judgment if Defendant posts an appropriate bond. (*See* Pl.'s Resp. at 3–5.)